# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In re the Matter of the Estate of:<br><br>DONALD C. MULLER,<br><br>                             Deceased.<br><br>KRISS MULLER,<br><br>                           Respondent,<br><br>     v.<br><br>RICHARD  J.  PETERSEN and  KAREN  A.<br>PETERSEN,<br><br>                           Appellants. | No.  47013-6-II<br><br><br>ORDER GRANTING MOTION TO<br>PUBLISH |

Stuart Morgan has filed a motion to publish the opinion that was filed on October 18, 2016.  After consideration, it is hereby

ORDERED that the final paragraph, which reads as follows, shall be deleted:  "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered."  It is further

No. 47013-6-II

ORDERED that this opinion is now published.

**DATED** this 18th day of January, 2017.

**PANEL: Jj. Bjorgen, Worswick, Maxa**

**FOR THE COURT:**

Bjorgen, C.J.
BJORGEN, C.J.

We concur:

Worswick, J.
WORSWICK, J.

Maxa, J.
MAXA, J.

2

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Matter of the Estate of: | No. 47013-6-II |
| DONALD C. MULLER, | |
| Deceased. | UNPUBLISHED OPINION |
| KRISS MULLER, | |
| Respondent, | |
| v. | |
| RICHARD J. PETERSEN and KAREN A. PETERSEN, | |
| Appellants. | |

BJORGEN, C.J. — Richard and Karen Petersen appeal the trial court's order adjudicating

the testacy of decedent Donald Muller, which invalidated on grounds of undue influence a will

benefitting them. They argue that the trial court erred by (1) adjudicating the validity of a

contested self-proving will, (2) excluding evidence under Washington's dead man statute, (3)

issuing inadequately supported findings of fact, and (4) declining to review and address their objections to the order. We hold that (1) the trial court properly adjudicated the validity of the will, (2) the Petersens have shown no reviewable errors related to the dead man statute, (3) the Petersens have effectively challenged only one of the trial court's findings of fact, and that finding is adequately supported, and (4) the Petersens waived any appellate challenge related to the trial court's review of their objections by agreeing not to address them with specificity and declining to move for reconsideration. Accordingly, we affirm the trial court's order.

FACTS

In 2012, Muller lived in Montesano with his domestic partner, Beatrice Powell, who handled his finances and helped him care for his extensive health problems. Powell died during the spring of that year, and the Petersens moved onto Muller's land shortly after her death. They became Muller's caregivers.

Muller's health deteriorated, and the Petersens took control of his finances, along with his health care supervision. With the Petersens' assistance, Muller executed a general durable power of attorney, naming Karen[1] his attorney in fact and Richard his alternate attorney in fact. Also with the Petersens' assistance, Muller executed a health care power of attorney, naming Richard as his attorney in fact for health care decisions and Karen as his alternate. The Petersens proceeded to engage in financial transactions with Muller's assets, for example, writing checks on his bank account payable to themselves or cash, selling his jewelry, and redeeming his savings bonds.

---

[1] To distinguish between the Petersens, we refer to each of them individually by first name. These references are to avoid confusion, and we intend no disrespect.

In August 2012, the Petersens helped Muller prepare and execute a will leaving to them all of his assets remaining after satisfaction of his debts and expenses. Neither Muller nor the Petersens consulted an attorney, and the Petersens brought in third parties unfamiliar to Muller to witness the will's execution. The will's existence was not disclosed to friends or family.

In December 2013, Karen signed a form indicating to doctors that Muller wished to receive "[c]omfort [c]are [o]nly" for his then-grave medical conditions. Clerk's Papers (CP) at 282-83. He was treated with pain management medications for several days and died on December 23.

In early January 2014, the Petersens offered Muller's 2012 will for probate. Kriss Muller, the decedent's brother, filed a will contest in February. He claimed, inter alia, that the will was the product of undue influence.

The trial court heard the will contest in October and November 2014. Kriss[2] intended to question both of the Petersens regarding particular transactions with Muller, but their attorney argued successfully that under Washington's dead man statute they could refuse to testify as to any such transaction. The Petersens successfully objected to subsequent questioning regarding the preparation of the 2012 will. They also successfully objected to Kriss's presentation of a summary of documents under ER 1006.

The trial court ruled in Kriss's favor, concluding that the Petersens exerted undue influence over Muller and declaring the 2012 will invalid. The Petersens objected to hundreds of the trial court's findings of fact. However, at a hearing on Kriss's proposed order, the Petersens stated that they did not expect the trial court to discuss each of the objections but

---

[2] To distinguish Kriss Muller from the decedent, Donald Muller, we refer to Kriss by his first name, intending no disrespect.

wished to preserve the underlying issues for appeal. The trial court signed the proposed order. The Petersens did not move for reconsideration in light of their objections under CR 60.

The Petersens now appeal the trial court's order invalidating the 2012 will.

ANALYSIS

I. ADJUDICATION OF THE WILL

The Petersens argue that the trial court erred procedurally by adjudicating testacy and ultimately rejecting and invalidating Muller's "self-proving will." Br. of Appellants at 4, 7. We disagree.

For a decedent's property to pass via will, the will must be probated in the superior court. RCW 11.96A.040(1). The superior court adjudicates testacy and decides whether to admit the will to probate or to reject it. RCW 11.20.020(1). Similarly, the superior court names the personal representative of the decedent's estate and issues letters testamentary. RCW 11.28.010.

The Petersens appear to argue that the trial court should not have adjudicated the validity of Muller's will because it was intended to be a self-proving will under RCW 11.20.020(2). A self-proving will authorized by that statute may include sworn affidavits from witnesses "stating such facts as they would be required to testify to in court to prove such will." RCW 11.20.020(2). However, such affidavits are allowed only "[i]n addition to the . . . procedure for the proof of wills" outlined in RCW 11.20.020(2). According to that procedure,

> the court may immediately hear the proofs and either probate or reject such will as the testimony may justify. Upon such hearing the court shall make and cause to be entered a formal order, either establishing and probating such will, or refusing to establish and probate the same, and such order shall be conclusive except in the event of a contest of such will as hereinafter provided.

RCW 11.20.020(1). Once probated, any party with an interest in the will may contest its validity within four months. RCW 11.24.010. In the event of such a will contest,

[i]ssues respecting the competency of the deceased to make a last will and testament, or respecting the execution by a deceased of the last will and testament under restraint or undue influence or fraudulent representations, or for any other cause affecting the validity of the will or a part of it, shall be tried and determined by the court.

RCW 11.24.010. The superior court is not bound by the content of the affidavits of a self-proving will if the validity of the will is contested; instead, it must engage in factfinding on the basis of all the evidence properly before it. *Id.* Following trial, the court may annul and revoke a will in part or in whole that is "for any reason invalid, or . . . not sufficiently proved to have been the last will of the testator." RCW 11.24.040.

Here, the trial court properly adjudicated testacy. The Petersens presented Muller's purported will for probate. The trial court probated the will, and Kriss timely contested its validity on grounds of undue influence. The trial court tried the will contest and determined that the will was invalid due to the Petersens' exertion of undue influence over Muller. The trial court did not err by adhering to this statutory procedure.

## II. DEAD MAN STATUTE

The Petersens argue that the trial court erred by excluding some of their testimony under our state's dead man statute. We disagree.

Washington's dead man statute provides in relevant part that:

in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased.

RCW 5.60.030. This statute was enacted "to prevent interested parties from giving self-serving testimony regarding conversations and transactions with the deceased because the dead cannot

7

respond to unfavorable testimony." *Parks v. Fink*, 173 Wn. App. 366, 375, 293 P.3d 1275 (2013).

The Petersens argue that the trial court erred by disallowing their testimony on four subjects under the dead man statute: (1) purchases made on Muller's behalf, (2) the circumstances surrounding their use of a downloaded will template, (3) withdrawing cash to give to Muller to keep at his home, and (4) Muller's desire to make a will but not file it with the county during his lifetime. Even if the trial court erred by excluding evidence of the first two subjects, the Petersens themselves invited any such errors by asserting the dead man statute defensively to exclude it. The Petersens can raise no error as to the latter two subjects because they did not offer any evidence on them and suffered no adverse ruling.

A.    Invited Errors

Under the invited error doctrine, a party may not set up an alleged error and then complain about the error on appeal. *Angelo Prop. Co. v. Hafiz*, 167 Wn. App. 789, 823, 274 P.3d 1075 (2012).

The Petersens state that the trial court improperly excluded evidence related to "several times we purchased things for Don or the farm and paid for these things on our credit card." Br. of Appellant at 6. They appear to refer to the trial court's decision not to admit summaries of purchase receipts and other expense-related documents under ER 1006. However, their counsel

asked the court to exclude those summaries. The Petersens also objected when Kriss attempted to introduce his own summaries of those expenses. The trial court agreed and excluded the summaries. Even if we were to assume arguendo that the trial court erred by excluding the summaries, the Petersens would have invited that error.

The Petersens also state that "the will template [they used to create Muller's will] was on Don and [Powell's] computer from when they did a will before and Don asked her to download the forms and they would complete them together." Br. of Appellant at 7. However, they objected to all questions regarding the use of the template and drafting of the will on the basis of the dead man statute. RP (November 6, 2014) at 282-84. The trial court sustained these objections. RP (November 6, 2014) at 282-84. They did not attempt to offer their own evidence related to the template. Therefore, even if we were to assume that the trial court erred in sustaining the Petersens' objections, any such error was invited.

B.     <u>Evidence Not Offered</u>

The remaining subjects about which the Petersens claim they were barred from testifying are not in the record. The Petersens state that "[w]e were accused of taking money from Don that we actually gave to him as he liked to keep cash at the farm" and "Donald C. Muller knew exactly what he wanted done with the will." Br. of Appellant at 6-7. However, the Petersens never attempted to introduce evidence that they gave Muller cash to keep at his home or that he had any particular desires related to the drafting of his will. Therefore, they suffered no adverse rulings on any such evidence.

## III. FINDINGS OF FACT

The Petersens argue that the trial court misinterpreted or improperly weighed the evidence presented at trial. Because we do not review such matters, we consider this to be an argument that the findings of facts and conclusions of law were inadequately supported.

We do not review determinations of witness credibility or evidentiary weight. *In re Estate of Palmer*, 145 Wn. App. 249, 266, 187 P.3d 758 (2008). Because the trial court "observes the witness's manner while testifying, [it] alone passes on a witness's credibility and measures the weight of the evidence." *Id*.

Instead, we review a trial court's decision following a bench trial to determine whether the trial court's findings of fact are supported by substantial evidence, and whether the findings of fact adequately support the conclusions of law. *Endicott v. Saul*, 142 Wn. App. 899, 909, 176 P.3d 560 (2008). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person that a premise is true. *Id*. Although a petitioner contesting the validity of a will must persuade the trial court by clear, cogent, and convincing evidence, *In re Estate of Barnes*, 185 Wn.2d 1, 10, 367 P.3d 580 (2016), "[i]t is for the trial court, and not this reviewing court, to determine whether the evidence in a given case meets [this] standard of persuasion," *Endicott*, 142 Wn. App. at 910.

We treat unchallenged findings of fact as verities on appeal. *Endicott*, 142 Wn. App. at 909. RAP 10.3(g) provides:

> A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

However, we may waive technical violations of this rule "[i]n appropriate circumstances" and review findings of fact despite improper assignment of errors as long as the appellant makes the nature of the challenge clear in the opening brief. *Harris v. Urell*, 133 Wn. App. 130, 137, 135 P.3d 530 (2006).

The Petersens have waived their challenges to all but one of the trial court's findings of fact by failing to properly assign error to them. The Petersens assign the following errors related to the substance of the trial court's findings and conclusions:

> 3. [T]he court erred in which version of the evidence [the judge decided to] believe[.]
>
> 4. [T]he court [erred in] misinterpreting evidence.

Br. of Appellant at 3. In their statement of the issues, they elaborate slightly, asking us to decide:

> 3. Whether the court erred in which version of the evidence believed, comparing [the] testimony of people who had been estranged from Donald C. Muller for years compared to those who saw him on a regular basis?
>
> 4. Whether the court misinterpreted evidence regarding statements made during trial and then disregarding that testimony during ruling?

Br. of Appellant at 4. None of these assignments of error or framing of the issues refers to any specific findings of fact, much less by number. Therefore, if we are to review any of the trial court's findings, the Petersens must make the nature of their challenges sufficiently clear elsewhere in their opening brief.

They have arguably done so only as to a single finding. They claim that one witness "testified that [all of] the jewelry sold [by the Petersens] . . . was hers," but that the trial court, apparently in error, found that she "testified [only] to the diamonds." Br. of Appellant at 6-7. In finding 64, the trial court found that the witness

testified that Richard Peterson sold jewelry to Pounder's Jewelry for her. The only specific description of [the witness's] jewelry she offered in testimony was for two "champagne diamonds."

CP at 239.

However, the trial court did not find that the witness testified only about those diamonds, but rather that those diamonds were the only jewelry she described with specificity. In challenging a finding that the witness "testified [only] to the diamonds," the Petersens appear to misstate the scope of finding 64. Br. of Appellant at 6-7.

Finding 64, properly interpreted, is supported by substantial evidence. At trial, the witness described in the finding testified that she gave Richard jewelry to sell at Pounder's "three or four times maybe," and that this jewelry encompassed "lots of things." RP (Nov. 12, 2014) at 495-96. She noted that he had sold "rings and necklaces" for her, but did not describe any of them further. RP (Nov. 12, 2014) at 496. When presented with a receipt showing the sale of two diamonds, the witness stated that "[t]hese were mine." RP at 496. That receipt apparently showed the sale of two "champagne diamonds." RP (Nov. 13, 2014) at 681. This evidence sufficiently supports the trial court's finding that the witness testified generally to having Richard sell jewelry for her, but specifically described only the champagne diamonds. Therefore, we uphold finding 64.

IV. FAILURE TO ADDRESS OBJECTIONS TO THE ORDER ADJUDICATING TESTACY

The Petersens also argue that the trial court erred by declining to individually address each of their objections to the findings of fact and conclusions of law. We hold that they waived this issue by failing to raise it in the trial court.

Subject to exceptions, we may decline to review issues not raised in and ruled upon by the trial court. RAP 2.5(a); *River House Dev. Inc. v. Integrus Architecture, P.S.*, 167 Wn. App. 221, 230, 272 P.3d 289 (2012).

The Petersens presented the trial court with hundreds of objections to Kriss's proposed findings and conclusions. However, at the presentation hearing on those findings and conclusions, the Petersens' counsel indicated to the court that the purpose of the voluminous objections was to preserve all possible underlying issues for appellate review. The trial court asked the Petersens and Kriss to meet and determine which objections, if any, the court should consider before signing the proposed order. The Petersens' counsel stated that this would not be necessary because

> we are not going to go through [all of the objections] today, and I understand that. So I just want to make sure that, you know, as far as what you are asking us to do, we have looked through them, and we have raised [them.]

RP (Apr. 1, 2015) at 13. Accordingly, the trial court did not address any of the objections to the proposed findings and conclusions in detail at the hearing. Instead, it indicated that it found no merit to the Petersens' objections, agreed with the proposed order in its entirety, and would sign that order as presented.

After the trial court issued its order adjudicating testacy, the Petersens did not move under CR 60 for reconsideration to address any of the objections raised to the proposed findings and conclusions or to address the trial court's decision not to orally rule on any of the objections. Because they agreed via counsel at the presentation hearing not to individually argue and address any of their objections, they may not now argue that the trial court erred by failing to individually address them. *See River House*, 167 Wn. App. at 230; *see also Angelo Prop. Co.*,

167 Wn. App. at 823 (noting that under the invited error doctrine, a party may not set up an error at trial and then challenge that error on appeal).

## ATTORNEY FEES

Both the Petersens and Kriss request an award of attorney fees on appeal. We may grant such an award if it is authorized by applicable law and the requesting party "devote[s] a section of its opening brief to the request." RAP 18.1(a)-(b).

The Petersens neither mention nor cite to any applicable law authorizing such an award. Furthermore, they have not devoted a section of their appeal to their request. Therefore, they have not properly requested attorney fees under RAP 18.1.

Kriss properly requests an award of attorney fees in a dedicated section of his brief, pointing to RCW 11.96A.150, the attorney fees provision of the Trusts and Estates Dispute Resolution Act (TEDRA). That statute allows an appellate court to award fees and other costs in its discretion to any party in an estate dispute proceeding governed by Title 11 RCW. *Kitsap Bank v. Denley*, 177 Wn. App. 559, 580-81, 312 P.3d 711 (2013). We may order such an award paid by "any party to the proceedings" or from "the assets of the estate or trust involved in the proceedings." RCW 11.96A.150(1)(a)-(b). In exercising our discretion, we may consider whatever factors we deem appropriate, including an appeal's merits or lack thereof. RCW 11.96A.150(1).

We award Kriss attorney fees on appeal to be paid by the Petersens, because the Petersens forced him to defend against a frivolous appeal. "An appeal is frivolous if there are no debatable issues on which reasonable minds can differ and [it] is so totally devoid of merit that there was no reasonable possibility of reversal." *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 787, 275 P.3d 339 (2012). The Petersens have raised no arguably meritorious issues

on appeal, thus eliminating any reasonable possibility of reversal. It would be unfair to require Kriss to bear the costs of defending against such an appeal, and we will not diminish the estate assets further to pay for the litigation. Therefore, we award Kriss his appellate costs and fees, to be paid by the Petersens.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

We concur:

Maxa, J.

Worswick, J.