**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| TED SPICE; PLEXUS DEVELOPMENT, LLC, | No. 45476-9-II |
| Appellants, | UNPUBLISHED OPINION |
| DORIS E. MATHEWS, | |
| Plaintiff, | |
| v. | |
| PIERCE COUNTY, a political subdivision; CITY OF PUYALLUP, a municipal corporation, | |
| Respondents. | |

BJORGEN, C.J. — In a series of appeals, Ted Spice appeals from the superior court's (1) grant of summary judgment to the city of Puyallup (City) on his claims against it relating to the provision of water service, (2) imposition of CR 11 sanctions against his attorney, and (3) award of reasonable attorney fees and costs to the City.

We hold that the superior court properly granted summary judgment to the City, did not abuse its discretion by imposing CR 11 sanctions against Spice's attorney, and did not err by granting the City's request for reasonable attorney fees and costs at trial. Consequently, we affirm the superior court.

FACTS

2004

In June 2004, Spice began the process of applying for water services from the City. At the time, Spice intended to redevelop property for commercial use consistently with the property's zoning classification of "Employment Center." Clerk's Papers (CP) at 283. The

property is located within the City's exclusive water service provider area, but is outside of the city limits. Under former Puyallup Municipal Code (PMC) 14.22.010 (2004), an applicant for a utility extension or connection must demonstrate that "they have initiated or are part of an ongoing annexation process which would bring the [subject] property . . . into the [City] limits." CP at 338.

On August 3, Spice attended a pre-application meeting with officials from the City, where he was informed that an annexation must be in place before water availability letters can be issued. On August 16, the City's Development Services Support Manager, Colleen Harris, informed Spice by e-mail that

> [PMC 14.22.010] specifically states that you have to be part of an ongoing annexation – the City does not have enough signatures from properties within your area to commence annexation, and until we do, you cannot apply for a pre-annexation agreement.

CP at 1108. Under Pierce County Code (PCC) 19D.140.060(F), "[i]f the applicant accepts the conditions of service prescribed by the water purveyor . . . the purveyor shall provide the applicant a signed certificate of water availability prior to Pierce County's issuance of the required approval/permit."

2005

Spice initiated the dispute resolution process under PCC 19D.140.090 and appeared on behalf of Plexus Investments LLC (Plexus) before the Pierce County Hearing Examiner (Examiner) on March 10, 2005. The Examiner considered "whether or not the City is allowed to refuse water service to properties within the water service area and not allow, or not consent to allowing, other water service options," and issued an order on May 19. CP at 285. The Examiner determined that

> [t]he [City] is unwilling to provide timely and reasonable water service to [Spice]'s parcel. Therefore, [Spice]'s parcel is hereby removed from the [City]'s water service area. [Spice] is allowed to proceed with his plans to develop a Group A well water system as an alternative to obtaining service from the [City].

CP at 285. Before this ruling, Spice had not been able to drill a well on his parcel because he required the City's consent, which it had refused.

2006

Plexus and Pierce County each submitted motions for reconsideration to the Examiner. On January 12, 2006, the Examiner issued its ruling on reconsideration and modified its May 19, 2005 decision as follows:

> The [City] is unwilling to provide timely and reasonable water service to the applicant's parcel. Therefore, the applicant's parcel is hereby removed from the [City's] water service area. The applicant is allowed to pursue with [sic] his plans to develop a Group A well water system as an alternative to obtaining service from the [City]. In addition, the applicant may request to obtain water service from any other available source. If either the Group A well water system or any other water source is not feasible for the applicant, then the applicant can request from the [Examiner] that the [City] be required to provide water to the site. All other properties located outside the [City] that are not undergoing the process of annexation and are in the water service area of the [City] may seek other water service options if the [City] does not agree to provide service within 120 days of application.

CP at 291.

On February 2, Spice filed his first petition in Pierce County Superior Court under the Land Use Petition Act (LUPA), chapter 36.70C RCW, for judicial review of the Examiner's May 19, 2005 order and January 12, 2006 order on reconsideration. On November 17, 2006, Spice withdrew this petition in order to "seek alternative, supplemental relief," as set out in the Examiner's January 12 order on reconsideration. CP at 522.[1] Also on November 17, Spice

---

[1] In *Spice v. Pierce County*, 149 Wn. App. 461, 467-68, 204 P.3d 254 (2009), we determined that the withdrawal of this petition more than 21 days after the Examiner's decision extinguished the statutory right to judicial review of the challenged decision.

3

submitted a "request for follow up hearing consistent with examiner's ruling." CP at 295 (emphasis omitted).

Before withdrawing his first LUPA petition, Spice attempted to develop a well on his property for the purpose of water supply. On June 22, 2006, Spice received a letter from the state Department of Health informing him that he would need the adjacent property owner, in this case the state Department of Transportation, to agree to various restrictive covenants before developing the well. On June 26, the state Department of Transportation informed Spice that it would not agree to the proposed restrictive covenants.

2007

On April 7, 2007, the City, Pierce County (County), and Spice appeared before the Examiner on Spice's request "to compel the [City] to provide water service to [his] site." CP at 97, 102. On August 7, the Examiner issued an order denying Spice's request, because PCC 19D.140.090(h) did not provide authority for the Examiner to require the City to provide water services to Spice's parcel.

During the interim between the hearing and the Examiner's decision, Spice also attempted to secure water services from other water providers. On April 10, Spice received a letter from Valley Water District informing him that it could not provide water services to his property because his "parcel lies within the service area of another water purveyor," and the property was too far away for a feasible connection. CP at 277. Similarly, on April 10 the Mt. View-Edgewood Water Co. informed Spice that it would not provide water service because Spice's parcel was located within the City's water service area.

On August 29, 2007 Spice filed his second LUPA petition in superior court, seeking judicial review of the Examiner's August 7, 2007 decision (Cause number 07-2-11635-0). The

4

LUPA petition listed Spice, Plexus, and Doris Mathews as petitioners.[2] Spice argued that the Examiner erred by not requiring the City to provide water services, requested a declaratory judgment that the City was required to provide water services, and sought damages under RCW 64.40.020(1)[3] for the City's failure to provide water. In his conclusion, Spice asked the court to grant his appeal, remand the case to the Examiner with direction to the City to provide water services, or in the alternative, enter a declaratory judgment requiring the City to provide water services, and for the court to award damages and attorney fees. On November 30, Spice filed a motion for summary judgment, which asked the court to determine that neither the County nor the City could contest the unchallenged findings and conclusions in the Examiner's 2006 order on reconsideration, and that the Examiner had authority to require the City to provide water services.

2008

At its hearing on January 25, 2008, the superior court made findings and conclusions and remanded the case back to the Examiner for further action. On September 12, the court issued an order based on the January 25 hearing that contained the following rulings:

1. The court affirms the August 7, 2007 decision of the [Examiner], to wit: The [Examiner] does not have the power to compel the City of Puyallup to provide water service to [Spice]'s property. However, the [Examiner] does have the power to determine what reasonable pre-conditions the City of

---

[2] For simplicity, we refer to the petitioners collectively as "Spice" unless otherwise indicated.

[3] RCW 64.40.020(1) states:

Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within time limits established by law: PROVIDED, That the action is unlawful or in excess of lawful authority only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.

Puyallup may place upon the furnishing of water (Puyallup concedes that [Spice is] within its water service area) including whether Puyallup may require annexation of [Spice's] real property into the City as a pre-condition of providing commercial water service to [Spice] and/or to processing an appropriate application for water service or changes in water service (whether commercial or residential) in accord with pertinent Puyallup Municipal Code.

2.  This matter is remanded to the [Examiner] for proceedings consistent with this ruling.

3.  If [Spice does] continue to pursue a change in [his] existing water service from the [City], [he has] to comply with the application process set forth in pertinent [City] Code, except insofar as the Code is inconsistent with this order.

4.  This Department retains jurisdiction over this matter in the event of issues that bring this matter back before the superior court.

5.  With the entry of this order as to the LUPA matter[,] the Declaratory Judgment action is moot.

6.  [Spice's] cause of action for damages and attorney fees pursuant to RCW 64.40 shall be bifurcated from the LUPA appeal and set for trial.

CP at 667-68.  Spice did not appeal this judgment.

2009

On December 8, 2009, Doris Mathews passed away.

2010

On November 9, 2010, the Pierce County Council enacted ordinance 2010-88s, which became effective on January 1, 2011.  In part, the ordinance removed the authority of the Examiner to resolve water service disputes under PCC 19D.140.090.

2011

On July 5, 2011, the City adopted ordinance 2983, which repealed and replaced the entirety of PMC 14.22 and became effective on July 18.  In part, the ordinance eliminated the

former requirement that applicants for water services outside the City's limits be in the process of annexation.

2013

On February 27, 2013, attorney Stephen Hansen filed a notice of association with Spice's attorney, Carolyn Lake, for the same cause number as Spice's second LUPA petition. The notice of association listed only Spice and Plexus as petitioners.

Also on February 27, about four and half years after the superior court's ruling on Spice's second LUPA petition, Hansen filed in superior court a note for the motion and assignment docket to set the trial date on Spice's remaining claims. On March 22, the court declined to set a trial date because it found that the case was not yet at issue, and ordered the City, County, and Spice to appear on May 3 for a review hearing.

On March 29, the City filed a motion for summary judgment requesting that the court dismiss Spice's claims with prejudice and award attorney fees. Before the court ruled on the summary judgment motion, Spice and the County entered into a stipulated order of dismissal with prejudice as to the County. That order stated in part that the LUPA action had "been fully adjudicated" and that Spice's damages claim was only against the City. CP at 1003-04. On June 21, the superior court granted the City's motion for summary judgment, dismissing all of Spice's claims and causes of action and awarding fees to the City under RCW 64.40.020(2).[4] Although Mathews was not listed in the caption as a party, the order expressly mentions Mathews as a petitioner. On July 1, Spice filed a motion for reconsideration, which the court denied on

---

[4] RCW 64.40.020(2) states, "The prevailing party in an action brought pursuant to this chapter may be entitled to reasonable costs and attorney's fees."

September 10. On September 24, the court awarded the City $132,790.65 in attorney fees and costs.

On October 10, about two weeks after the superior court's ruling granting attorney fees and costs to the City, Spice filed his first notice of appeal in this case, appealing the September 12, 2008 superior court order, the June 21, 2013 order granting summary judgment to the City, and the September 10, 2013 order on reconsideration. Although Mathews was listed as an appellant in the notice of appeal's caption, the notice also contained a footnote announcing for the first time in our record that "[p]etitioner before the Trial Court below Doris Mathews is now deceased." CP at 1369. On December 13, the superior court filed an order granting the City reasonable attorney fees in the amount of $132,790.65 jointly and severally against Spice, Plexus, and Mathews, as well as its judgment in the case. On December 30, Spice filed his second notice of appeal, appealing the superior court's December 13 award of attorney fees and costs and the final judgment.[5]

2014

On February 14, 2014, the City submitted a motion to our court arguing that the death of Mathews voided all the orders entered by the superior court after her death and asking us to dismiss Spice's appeal and remand it to superior court for further proceedings. On June 4, we issued an order "remanding judgments for further proceedings," which stated, in part:

> The [City] appears to be correct that the judgments are void but has not demonstrated that this appeal should be dismissed. This court concludes that the superior court should conduct further proceedings, readdressing the 2013 judgments in light of the fact of [Mathews'] 2009 death. Accordingly, it is hereby
> ORDERED that the 2013 judgments are remanded to the superior court for further proceedings as addressed above. It is further

---

[5] The second notice of appeal also included Doris Mathews as an appellant in the caption, but states that "[t]he Parties seeking review are specified: Appellants Ted Spice and Plexus." CP at 2593.

ORDERED that upon entry of amended judgments by the superior court, jurisdiction will return to this court, and the Clerk of this court will issue an amended perfection schedule.

CP at 2632-33 (emphasis omitted).

After the remand to superior court, the City filed three motions on October 9, 2014. First, the City filed a motion to vacate all orders and the final judgment entered after the death of Mathews. Second, the City submitted a motion for summary judgment asking the superior court to dismiss the case due to Spice's failure to join the Estate of Doris Mathews (Estate) as a necessary and indispensable party to the litigation. Third, the City presented a motion for CR 11[6] sanctions against Spice, Hansen, and Lake, and for reasonable attorney fees and costs.

2015

On January 9, 2015, the City, County, and Spice appeared before the superior court in order to determine how to proceed on remand. The court stated that it would not grant the motion to dismiss at that time, because a dismissal on remand appeared to contradict the remand order's directive to conduct further proceedings. On remand, the superior court interpreted our order as a direction to determine whether the Estate desired to participate in the litigation between Spice and the City, and if not, whether the litigation could proceed in absence of the Estate's participation. Additionally, despite the prior 2013 stipulation, the trial court ruled that the County was a party to the appeal, apparently in reliance on our remand order.

---

[6] CR 11(a)(1) states in part:

The signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
(1) it is well grounded in fact.

The superior court also questioned attorney Lake about her knowledge of the death of Mathews:

> [Court]: Let me ask you this, when did you first learn that Ms.Mathews had passed?
> [Lake]: You know, I can't recall an exact date. . . . [W]hat difference does it make[?] Because in our situation, Plexus existed, Mr. Spice had property rights that went forward, and based on all the documents that we had, Mr. Spice was the managing member of Plexus.

Verbatim Report of Proceedings (VRP) (Jan. 9, 2015) at 27.

On June 5, 2015, Spice, the City, County, and Estate attended a hearing before the superior court. Attorney Ryan Hanis represented Donna Dubois in her capacity as personal representative of the Estate, and attorney Long represented Dubois in her individual capacity. In keeping with the proposed approach at the January 9 hearing, the superior court asked the Estate whether it intended to participate in the litigation. Hanis and Long both replied that the Estate was opposed to participating in the lawsuit.

Having determined that the Estate did not want to participate in the litigation, the superior court proceeded to consider whether the 2013 judgment was valid:

> All right. As I indicated to you, the next question that I'm going to attempt to answer here concerns the validity of the [2013] Judgment.
>
> . . . .
>
> And my conclusion is [the judgment is] void, that the [E]state is not a party, doesn't want to be a party. . . .
>
> [The Estate] can't be forced, to my reading of the law, as a party [sic], and they will not substitute Ms. Mathews and I can't do that nor would I. And I can't substitute the PR, I can't substitute Ms. Dubois.

VRP (June 5, 2015) at 25, 29-30.

The superior court granted the City's October 9, 2014 motion to vacate all orders and judgments entered after the death of Mathews and prior to our remand, as well as the City's

October 9, 2014 motion for summary judgment, dismissing all of Spice's claims with prejudice for failure to join the Estate as a necessary and indispensable party. On July 20, 2015, the superior court entered written findings and orders based on its oral ruling on June 5.

Spice filed his third notice of appeal on August 17, 2015, appealing the superior court's July 20 order granting summary judgment to the City. On September 25, the City, County, and Spice attended a hearing on whether CR 11 sanctions should be imposed on Lake, Hansen, and/or Spice. On December 11, the court granted the City's motion for CR 11 sanctions and explained its reasoning as follows:

> Sanctions are not appropriate merely because an action's factual basis ultimately proves deficient or a party's view of the law proves incorrect. So what we see with CR 11 is a party can take an extreme position and can notify the court of that extreme position and move forward knowing that that in and of itself is not necessarily going to be a CR 11 violation given the candid representation to the court of what they're doing. Sanctions, impositions of sanctions, the court has to carefully evaluate an attorney's inquiry into the law and that the facts – that [their] inquiring into the law and the facts was reasonable. And the reasonableness of an attorney's prefiling inquiry or filing during the course of litigation inquiry is the reasonableness under the circumstances.
>
>      . . . .
> Now, Washington courts and I retain broad discretion to tailor, if I find a violation, appropriate sanction to determine against whom the sanction should be imposed. . . . This can even be nonmonetary sanctions in some instances. CR 11 sanctions are not designed to be a fee shifting mechanism. They cannot be a fee shifting mechanism. . . . When the trial court awards the attorney fees as a sanction, it must limit those fees to the amounts reasonably expended in responding to the improper pleadings.
>
>      . . . .
> I find no evidence anywhere in this file to – I don't find any evidence to support the proposition that Ms. Lake conceived a plan to hide this [information] from the court, but there was a point when she did not engage in a reasonable inquiry. And I still don't know why. . . . And I still don't know why when Ms. Lake knew of the death of Ms. Mathews. And I've asked that question on the record. And to this point in time, I've received no response. But I'm satisfied that Ms. Lake knew, or should have known after a reasonable inquiry in 2012, particularly, when Mr. Hansen associated in this case *following his lawsuit against the [E]state of Doris Mathews* that Ms. Lake knew or should have known. And this was significant. It was significant to the City. It was significant to all the litigants. It was significant to the court. It mattered. It was important. This court awarded nearly $132,000

11

judgment for attorneys' fees against a named plaintiff who was dead and had been dead for roughly four years before that award. And that dead plaintiff was jointly and severally liable for $132,000. And the bottom line is that the plaintiff's lawyer knew she was dead. This had an effect. This is serious. Now, I find that that was a violation of CR 11.

. . . .

Now, I've indicated to you how I calculate. The City has asked for $312,000. I think that if I was to entertain something like that, that would be on all fours with the fee shifting that we see the courts saying, no, you can't do it, particularly the federal courts.

. . . .

I'm imposing CR 11 sanctions in the amount of $45,000. It's never easy to know what sanctions should be, and I have no barometer, I have no litmus test for this. But I think that is a reasonable figure given the nature and the extent of this litigation and how far it was allowed to go before this information was divulged. And I think the reasonable inquiry would have resulted in it being divulged earlier than it was.

VRP (Dec. 11, 2015) at 12-14, 25, 27-30 (emphasis added).

The superior court did not find a basis to impose CR 11 sanctions on Spice or Hansen.

2016

On January 28, 2016, the City submitted a motion to the superior court asking the court to amend the July 20, 2015 judgment and the December 13, 2013 judgment so as to apply only to Spice and Plexus, or in the alternative, for the court to consider the motion as a renewed motion for attorney fees under chapter 64.40 RCW.

On April 15, the superior court filed its findings of fact, conclusions of law, and order imposing CR 11 sanctions against attorney Lake. Also on April 15, the superior court entered an order awarding the City reasonable attorney fees and costs under chapter 64.40 RCW. On that date Spice filed his fourth notice of appeal in our court, appealing the April 15 order imposing CR 11 sanctions on attorney Lake and the April 15 order granting the City reasonable attorney fees and costs.

On May 20, the superior court filed the final judgment for both the CR 11 sanctions and the award of attorney fees under chapter 64.40 RCW. On May 24, Spice filed his fifth notice of appeal in this case, appealing the May 20 judgments for the CR 11 sanction award and the award of attorney fees under chapter 64.40 RCW.

## ANALYSIS

### I. SCOPE AND STANDARD OF REVIEW

A.      Legal Standards

We review a grant of summary judgment de novo. *Dean v. Fishing Co. of Alaska, Inc.*, 177 Wn.2d 399, 405, 300 P.3d 815 (2013). Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). When reviewing an order of summary judgment, we engage in the same inquiry as the superior court. *Post v. City of Tacoma*, 167 Wn.2d 300, 308, 217 P.3d 1179 (2009).

B.      Scope of Review

To reiterate, on July 20, 2015, the superior court voided the June 21, 2013 order granting summary judgment and its December 13, 2013 final judgment. Spice's first and second appeals were in response to these 2013 judgments. Therefore, when the superior court voided the orders that these notices of appeal purported to appeal, the first and second notices of appeal similarly became nullities, because there was no longer anything for either notice to appeal. As such, this appeal consists of the issues preserved by Spice's third, fourth, and fifth notices of appeal.

In its July 20, 2015 order granting summary judgment, the superior court ruled that summary judgment was appropriate "due to the absence of the Estate as a necessary and indispensable party to this litigation." CP at 5389. The superior court also imposed CR 11

13

sanctions on attorney Lake and awarded attorney fees and costs to the City. Consequently, the specific issues for review in this case consist of the superior court's determination that (1) the Estate is a necessary and indispensable party, without whom the litigation may not in good conscience proceed, (2) the imposition of CR 11 sanctions, (3) the award of attorney fees and costs to the City, and (4) the City's request for attorney fees on appeal.

For the reasons set out below, we affirm the superior court's grant of summary judgment, dismissing Spice's claims with prejudice for failure to join the Estate as a necessary and indispensable party. Therefore, we do not reach Spice's arguments regarding: (1) whether the trial court erred by not finding that the City breached a duty to provide water service, (2) whether the superior court erred by not granting Spice declaratory relief, and (3) whether the superior court erred by granting the City's 2013 motion for summary judgment.

C.      Assignments of Error

Before we reach Spice's arguments on appeal listed above, we first address his numerous assignments of error in this appeal. In his briefing, Spice assigns error to 77 of the superior court's findings or conclusions, in addition to the orders associated with three separate superior court rulings. We review challenged findings of fact for substantial evidence, which is evidence sufficient to persuade a fair-minded person the premise is true. *Sunnyside Valley Irr. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). We review de novo whether the findings of fact support the superior court's challenged conclusions of law. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341, 308 P.3d 791 (2013). We consider unchallenged findings as verities on appeal. *In re Estate of Muller*, 197 Wn. App. 477, 486, 389 P.3d 604 (2016).

Spice does not provide argument as to why any of the challenged findings or conclusions are erroneous beyond a reference to them by number in his assignments of error. Our Supreme Court has explained that it is not the appellate court's "obligation to comb the record with a view toward constructing arguments for counsel as to what findings are to be assailed and why the evidence does not support these findings." *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). We have previously held that a party waives its challenge to a finding by failing to properly assign error to the finding, although we may waive technical violations of this rule as long as the appellant makes the nature of the challenge clear in the opening brief. *In re Muller*, 197 Wn. App. at 487.

Therefore, Spice has waived his objections to the challenged findings and conclusions by failing to provide specific arguments and citations to the record. These findings, consequently, are verities on appeal. *In re Muller*, 197 Wn. App. at 486. However, 18 of Spice's assignments of error are associated with the superior court's "findings and conclusions" contained in the July 20, 2015 summary judgment order. Br. of Appellant at 8. Findings of fact "are superfluous on appeal from an order of summary judgment because of the de novo nature of our review." *Old City Hall LLC v. Pierce County AIDS Found.*, 181 Wn. App. 1, 14-15, 329 P.3d 83 (2014). Therefore, we do not consider the assignments of error to the findings in the summary judgment order. Instead, consistently with CR 56, we consider whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law.

## II. MOOTNESS

Absent an exception, we will not review issues that are moot or involve abstract propositions. *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 447, 759 P.2d 1206 (1988). An issue is moot if "a court can no longer provide effective relief." *Orwick v. City of Seattle*,

103 Wn.2d 249, 253, 692 P.2d 793 (1984). Our Supreme Court has identified an exception to the doctrine of mootness that permits review if a moot case presents "issues of continuing and substantial public interest." *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004).

On November 9, 2010, the Pierce County Council enacted ordinance 2010-88s, which became effective on January 1, 2011. In part, the ordinance removed the authority of the Examiner to resolve water service disputes under PCC 19D.140.090. On July 5, 2011, the City of Puyallup Council adopted ordinance 2983, which repealed and replaced the entirety of PMC 14.22 and became effective on July 18. In part, the ordinance eliminated the former requirement that applicants for water services outside the City's limits be in the process of annexation.

In his briefing, Spice raises several arguments regarding the authority of the Examiner to compel the City to provide water service to Spice and further contends that the superior court erred by not requiring the City to provide water services to his property. In addition to being outside the scope of review for this appeal, Spice's arguments are moot because the Examiner no longer has authority to resolve water service disputes, annexation is no longer a prerequisite to provision of water services, and Spice did not appeal the January 12, 2008 order holding that his declaratory judgment action was moot. Therefore, we decline to review these issues

### III. SUMMARY JUDGMENT

Spice contends that the superior court erred by dismissing his lawsuit on summary judgment on the grounds that the Estate was a necessary and indispensable party. Spice argues that the court erred in deciding this issue under CR 19 because CR 25 controls, and that he has complied with the requirements of CR 25(a)(2).[7] Although Spice may be correct that CR 25 did

---

[7] CR 25(a)(2) states:

(2) Partial Abatement. In the event of the death of one or more of the plaintiffs or one or more of the defendants in an action in which the right sought to

have a role to play in this litigation, he does not explain how the operation of CR 25 otherwise modified or excused any of the requirements under CR 19. Because Spice does not explain why CR 25 operates to the exclusion of CR 19, his argument fails.

Spice also claims that the superior court erred by finding that he had a duty to substitute the Estate after Mathews died. He argues that under RCW 11.40.110,[8] he had no duty to substitute after the death of Mathews. However, this argument does not address the issue on appeal, whether or not dismissal under CR 19 for failure to join was appropriate. Therefore this argument fails.

Spice asserts that he has always had sufficient authority to litigate this dispute. However, Spice's authority as a party is not the issue. The superior court dismissed this case because it found that it could not proceed without the Estate as a necessary and indispensable party. Therefore, this argument fails.

Spice contends that his ownership interest in the subject property in this case establishes that he is an owner of a "property interest" who may seek damages under RCW 64.40.020. Br. of Appellant at 65. Although Spice may have a property interest, he does not explain how that fact affects the superior court's determination that the Estate was a necessary and indispensable party under CR 19. Therefore, this argument fails.

---

be enforced survives only to the surviving plaintiffs or only against the surviving defendants, the action does not abate. The death shall be suggested upon the record and the action shall proceed in favor of or against the surviving parties.

[8] RCW 11.40.110 states:
If an action is pending against the decedent at the time of the decedent's death, the plaintiff shall, within four months after appointment of the personal representative, serve on the personal representative a petition to have the personal representative substituted as defendant in the action. Upon hearing on the petition, the personal representative shall be substituted, unless, at or before the hearing, the claim of the plaintiff, together with costs, is allowed.

Spice argues that all property owners are not indispensable parties in land use cases and by extension that the superior court erred by determining that the Estate was a necessary and indispensable party to the litigation. He supports this by arguing that all of the cases relied upon by the City are either pre-LUPA cases or non-LUPA writ cases. We agree with the superior court that the Estate was a necessary and indispensable party for two reasons. First, the presence of the Estate is necessary to avoid further collateral damage to the Estate in the event that Spice does not prevail at trial, which occurred in this case when the superior court imposed attorney fees against Mathews jointly and severally in its award of attorney fees to the City on December 13, 2013. Second, generally "a landowner is an indispensable party in a case that would affect the use of the landowner's property." *Ahmad v. Town of Springdale*, 178 Wn. App. 333, 341, 314 P.3d 729 (2013). Spice's argument that this case is distinguishable because it involves a LUPA action is not persuasive, since the holding in *Ahmad* applies broadly to "landowners" and LUPA applies to determinations affecting the use of real property. RCW 36.70C.020(2)(a)-(c).[9] For these reasons, the superior court properly determined that the Estate was a necessary and indispensable party to the litigation and did not err in granting summary judgment dismissing Spice's claims on that basis.

## IV. CR 11

Spice claims that the superior court erred by imposing CR 11 sanctions on attorney Lake. We disagree.

---

[9] Spice filed his second LUPA petition in 2007. RCW 36.70C.020(2) was amended by *Laws of* 2009, chapter 419, section 1, and by *Laws of* 2010, chapter 59, section 1. However, neither of these amendments changed the provisions establishing that LUPA applies to determinations affecting the use of real property.

Generally, CR 11 "deals with two types of filings: those lacking factual or legal basis (baseless filings), and those made for improper purposes." *MacDonald v. Korum Ford*, 80 Wn. App. 877, 883, 912 P.2d 1052 (1996). A baseless filing is one that is not well grounded in fact or not warranted by existing law or a good faith argument for the alteration of existing law. *Id*. at 883-84. A court may not impose CR 11 sanctions for a baseless filing unless it also finds that the attorney who signed and filed the particular document failed to conduct a reasonable inquiry into the factual and legal basis of the claim. *Id*. at 884. We use an objective standard to determine whether a reasonable attorney in like circumstances could believe that his or her action was factually and legally justified. *Id*.

We review both the determination whether CR 11 was violated and the appropriateness of a sanction under it for an abuse of discretion. *In re Guardianship of Lasky*, 54 Wn. App. 841, 852, 854, 776 P.2d 695 (1989). A court abuses its discretion if its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported by the record or was reached by applying the wrong legal standard. *Id*. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, reaches an outcome that is outside the range of acceptable choices, such that no reasonable person could arrive at that outcome. *Id*.

The superior court found that the attorney's filings on behalf of Mathews after her death were neither well-grounded in fact nor legally justified. The court observed that under our holding in *Stella Sales, Inc. v. Johnson*, once a party dies, that party's attorney loses legal authority to act on the deceased's behalf. 97 Wn. App. 11, 18, 985 P.2d 391 (1999) The superior court also determined that as of 2012 when attorney Hansen associated with attorney

19

Lake in this litigation after participating in a lawsuit against the Estate of Mathews, attorney Lake knew or reasonably should have known that her client was dead. Consequently, the superior court determined that attorney Lake had filed documents "without reasonable cause or inquiry," because she had neither a factual nor legal basis to file pleadings on behalf of Mathews after her death, which Lake knew or reasonably should have known about in 2012. CP at 7474.

Spice's briefing on the CR 11 issue contains 15 subsections. We address each one separately.

1. Spice argues that the superior court abused its discretion by imposing CR 11 sanctions when two viable plaintiffs with an identical cause of action remained following the death of Mathews. However, the superior court sanctioned the attorney for submitting signed documents to the court "without reasonable cause or inquiry" in violation of CR 11 because she had neither a reasonable factual nor legal basis to file documents on behalf of Mathews after her death. CP at 7474, 7476. The presence of other plaintiffs does not call this holding by superior court into question.

2. Spice contends that the superior court abused its discretion by imposing CR 11 sanctions because it was mistaken regarding the ownership interest in the subject property at different points in the chronology of this litigation. However, the superior court sanctioned the attorney for submitting signed documents to the court "without reasonable cause or inquiry" in violation of CR 11 because she had neither a reasonable factual nor legal basis to file documents on behalf of Mathews after her death. CP at 7474, 7476. The ownership of the subject property does not alter the attorney's obligations under CR 11.

3. Spice also asserts that the superior court's language in the order imposing CR 11 sanctions that "Petitioners' counsel has never offered explanation for her failure to advise the

Court or defendants of the death of her client, Ms. Mathews," is "untrue and unfair." Br. of Appellant at 75. Assuming Spice intended to challenge the above statement as a factual finding, it is supported by substantial evidence in the record. When asked by the superior court when she discovered the death of her client Mathews, attorney Lake responded, "You know, I can't recall an exact date. . . . [W]hat difference does it make[?]" VRP (Jan. 9, 2015) at 27. Furthermore, the explanation offered in Spice's briefing, that there was still a viable cause of action with regard to Spice and Plexus, does not explain why attorney Lake never disclosed Mathews' death. Moreover, Spice's focus on the propriety of the attorney's actions with regard to Spice and Plexus ignores the superior court's concern regarding continued representation *of Mathews* after her death. Therefore, this argument fails.

4. Spice claims that the superior court erred by imposing CR 11 sanctions because Mathews' death was noted on the record in compliance with CR 25. However, Spice does not explain how compliance with CR 25 necessarily satisfies an attorney's obligations under CR 11. Moreover, Spice's assertion that "as soon as the litigation turned from seeking *affirmative relief* for Petitioners to the potential of an *adverse* monetary ruling as to Petitioners, Petitioners noted on the record the passing of one of the three Petitioners," is not well taken. Br. of Appellant at 78. In this case, attorney Lake allowed an adverse ruling on attorney fees to be made against her deceased client *before* she informed the court that Mathews had died. Furthermore, because RCW 64.40.020(2) authorizes attorney fees for the *prevailing party*, there was a possibility of an adverse monetary ruling from the beginning of the litigation because there is always a risk that one will not prevail at trial. Therefore, this argument fails.

5. Spice further argues that the City failed to provide adequate legal authority for the premise that one violates CR 11 sanctions by failing to disclose that her client died despite

continued representation.  Spice also contends that his attorneys complied with RCW 10.40.110.  However, Spice does not explain how compliance with RCW 10.40.110 necessarily satisfies an attorney's obligations under CR 11.  Furthermore, the superior court sanctioned the attorney for submitting signed documents to the court "without reasonable cause or inquiry" in violation of CR 11 because she had neither a reasonable factual nor legal basis to file documents on behalf of Mathews after her death.  CP at 7474, 7476.  In its motion for CR 11 sanctions, the City cited to *Stella Sales* for the proposition that an attorney loses authority to file on behalf of a client after the client dies.  97 Wn. App. 11.  Therefore, the City provided sufficient legal authority for the court to conclude that the attorney's filings were "without reasonable cause or inquiry."  CP at 7474.  This argument thus fails.

6.  Spice next asserts that the superior court's CR 11 sanction lacks legal support.  CR 11 "authorizes a trial court to impose appropriate sanctions if a party's filing is not well grounded in fact, or not warranted by existing law or a good faith argument to alter existing law."  *Lee v. Kennard*, 176 Wn. App. 678, 690-91, 310 P.3d 845 (2013).  Spice argues that the attorney's filings were not baseless because "[p]etitioners presented factual and legal support that Plexus LLC and or Ted Spice or both had ownership and management authority . . . sufficient to maintain the suit."  Br. of Appellant at 81.  However, the superior court imposed CR 11 sanctions because the submissions to the court with regard to Mathews were not well grounded in fact or law because Mathews had died.  Therefore, this argument fails.

7.  Spice maintains that the City has not met its burden to show that CR 11 sanctions are appropriate.  Specifically, Spice claims that "[t]he burden is on the movant to justify the request for CR 11 sanctions," citing *Biggs v. Vail*, 124 Wn.2d 193, 202, 876 P.2d 448 (1994).  Br. of Appellant at 82 (emphasis omitted).  In this case, the trial court's order specified that CR 11

sanctions were imposed for filing court documents on behalf of Mathews after her death "without reasonable cause or inquiry within the meaning of CR 11." CP at 7474. This basis satisfies any burden to justify imposition of the sanctions.

8. Spice contends that the superior court abused its discretion in imposing CR 11 sanctions because there is no legal authority for the proposition that when an LLC and its members are involved in litigation and one of its members dies, the litigation must cease and that consequently there was no "offending conduct." Br. of Appellant at 82. However, the superior court's sanction was based on the attorney's submission of signed documents to the court "without reasonable cause or inquiry" in violation of CR 11 in the absence of a reasonable factual or legal basis to file documents on behalf of Mathews after her death. CP at 7474, 7476. Spice claims that the order must identify which pleadings violated CR 11. Assuming that to be correct, the court's order, read as a whole and in context, reasonably identifies those pleadings, filings, and motions filed on behalf of Mathews "[b]etween December 9th 2009 and October of 2013." CP at 7468. Therefore, this argument fails.

9. Spice also asserts that the City has not demonstrated that the attorney's filings were "baseless," because "Plaintiff presented facts and law in support [of] Petitioner's position that at all times [were] relevant." Br. of Appellant at 83-84 (emphasis omitted). To repeat, the sanction was based on the submission of signed documents to the court "without reasonable cause or inquiry" in violation of CR 11 because there was no reasonable factual nor legal basis to file documents on behalf of Mathews after her death. CP at 7474, 7476. Therefore, this argument fails.

10. Spice claims that Plexus and Spice had authority to pursue the litigation after Mathews' death and "[t]hat is all [that] is required to defeat a CR 11 Motion." Br. of Appellant

23

at 84. Spice does not cite to any authority for this premise. This court does not consider conclusory arguments unsupported by citation to authority or rational argument. *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012). Therefore, we decline to consider this argument.

11. Spice asserts that the superior court erred by imposing CR 11 sanctions because the attorney relied on CR 25 and RCW 4.20.046. However, Spice does not explain how reliance on either of these points of authority satisfies an attorney's obligations under CR 11. Therefore, because this argument is unresponsive to the CR 11 issue on appeal, this argument fails. *See Mason*, 170 Wn. App. at 384.

12. Spice further contends that the City's request for over $300,000 in sanctions is not quantified with precision and is not the least severe sanction. However, Spice does not explain how the City's *requested* sanction affects this court's review of the superior court's imposition of CR 11 sanctions. Therefore, this argument fails.

Spice also argues that the $45,000 sanction is "all the more disproportionate since the [superior] court was aware that . . . Legal Counsel had received no compensation since 2008." Br. of Appellant at 87. Spice, however, does not cite to any authority for the proposition that a court must consider if or how much an attorney has been paid prior to imposing CR 11 sanctions on that attorney. More to the point, Spice does not explain how the $45,000 sanction was an abuse of discretion under all the circumstances. Thus, this argument fails.

13. Spice claims that under CR 11, all doubts must be resolved in favor of the nonmoving party. This statement is true. *Saldivar v. Momah*, 145 Wn. App. 365, 404, 186 P.3d 1117 (2008). But there is no doubt that Mathews died on December 8, 2009, and that the attorney continued to file and sign documents on behalf of Mathews after her death. With these well-established facts, the need to resolve doubts in favor of the nonmoving party has little scope

in the decision. In any event, it does not suggest that the superior court abused its discretion. Therefore, this argument fails.

14. Spice contends that the superior court abused its discretion in imposing CR 11 sanctions because the sanctions would have an impermissible chilling effect. He argues that "[b]ecause Rule 11 sanctions have a potential chilling effect, the trial court should impose sanctions only when it is patently clear that a claim has absolutely no chance of success." Br. of Appellant at 89. As noted, *Stella Sales* explained that "[w]hen a party to a lawsuit dies . . . the action must be continued by or against the deceased party's representatives or successors in interest," and that "[t]he attorney for the deceased party may no longer represent her interests." 97 Wn. App. at 18. Thus, the only action that would be chilled by this award is the unauthorized representation of a deceased person, conduct that should be discouraged. Consequently, this argument fails.

15. Spice asserts that the City attempted to impermissibly use CR 11 as a fee shifting mechanism. However, the superior court's oral ruling made it clear that it was not using CR 11 as a fee shifting mechanism when it imposed sanctions on attorney Lake. Therefore, this argument fails.

Because none of Spice's individual arguments are meritorious, we hold that the superior court did not abuse its discretion by imposing CR 11 sanctions.

V. ATTORNEY FEES

A. Superior Court Award of Fees

Spice claims that the superior court erred by granting attorney fees to the City. We disagree.

25

Spice argues that there is no basis in law for the superior court to award fees to the City. Typically a prevailing party may recover attorney fees authorized by statute, equitable principles, or agreement between the parties. *Landberg v. Carlson*, 108 Wn. App. 749, 758, 33 P.3d 406 (2001). In its April 15, 2016 order granting fees to the City, the superior court concluded that "[u]nder RCW 64.40.020, the prevailing party is entitled to an award of reasonable attorneys' fees and costs." CP at 7491. Although Spice points out that the City did not cite to chapter 64.40 RCW in its October 2014 motion for summary judgment, this observation ignores the fact that the City's motion of January 28, 2016 for attorney fees expressly relied on chapter 64.40 RCW. Furthermore, Spice does not explain how failure to cite to legal authority in an opening motion precludes an award of attorney fees where authority for such a fee in fact exists. Rather, Spice's argument appears to be that this court "should find . . . that there was no legal basis for awarding attorney fees by statute, under contract, or in equity and that the [superior] court abused its discretion," by awarding fees. Br. of Appellant at 93-94. Because RCW 64.40.020 provides authority for an award of attorney fees in this case, this argument fails.

Spice also asserts that the City's CR 59 request for fees is untimely and barred. However, the City did not submit a request for fees under CR 59; it attempted to seek fees under CR 54 and CR 60. The superior court determined that the City's CR 60 motion to amend was not meritorious, but found that the City's motion for fees under CR 54(d)(2) was meritorious.[10] Although the superior court acknowledged that the motion was untimely, it concluded that a CR 54(d)(2) motion was not waived due to untimeliness unless the opposing party could demonstrate

---

[10] CR 54(d)(2): Attorney's Fees and Expenses: Claims for attorney's fees and expenses, other than costs and disbursements, shall be made by motion unless the substantive law governing the action provides for the recovery of such fees and expenses as an element of damages to be proved at trial. Unless otherwise provided by statute or order of the court, the motion must be filed no later than 10 days after entry of judgment.

prejudice. Therefore, because this argument does not address the grounds on which the superior court granted attorney fees, CR 54(d)(2), it fails.

Spice further contends that the City's request for attorney fees is barred by judicial estoppel. We disagree.

Judicial estoppel is an equitable doctrine that prevents a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007). The doctrine aims to preserve respect for judicial proceedings and avoid inconsistency, duplicity, and squandering of time. *Id*. This court considers three factors to determine whether application of judicial estoppel is appropriate,

> (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id*. at 538-39 (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).

Spice claims that the City's January 28, 2016 motion to amend the December 13, 2013 judgment and July 20, 2015 order to reflect an award of attorney fees to the City as against only Spice and Plexus is inconsistent with the City's request to vacate the December 13, 2013 judgment. However, the superior court did not grant this motion, instead granting the City's alternative relief sought under CR 54(d)(2).[11] The City's renewed request for attorney fees in

---

[11] In its ruling, the superior court explained, "The City's motion for fees based on the July 20, 2015 summary judgment and RCW 64.40.020 should be granted," and did not amend the December 13, 2013 judgment. CP at 7501.

2016 under CR 54(d)(2) is consistent with its earlier position in the litigation in 2013 when it was awarded the same amount of attorney fees. Therefore, because the City's request for fees is consistent with its earlier position in the litigation, this argument fails.

B.      Appellate Fees

The City requests attorney fees and costs on appeal pursuant to RAP 18.1(a).[12] The City argues that attorney fees and costs are appropriate under RCW 4.84.370, CR 11, and RCW 64.40.020. We hold that attorney fees and costs on appeal are authorized under RCW 64.40.020 with limitations.

Our Supreme Court has held that a prevailing party in an action under chapter 64.40 RCW is also entitled to recover attorney fees it incurred on appeal under RCW 64.40.020(2). *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 128, 829 P.2d 746 (1992). The City is the substantially prevailing party with respect to the action for damages under RCW 64.40.020 and therefore is entitled to reasonable attorney fees under RCW 64.40.020. However, RCW 64.40.020(1) and (2) authorize the recovery of attorney fees in only a limited situation: by the prevailing party in an action by certain permit applicants "for damages to obtain relief from [certain] acts of an agency." This does not authorize the recovery of attorney fees in other circumstances. Therefore, the City is entitled to recover attorney fees on appeal which are reasonably attributable to its arguments in favor of upholding the dismissal of Spice's claim under chap. 64.40 RCW. It is not entitled to attorney fees on appeal relating to other issues, including CR 11.

---

[12] RAP 18.1(a) states: "If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court."

CONCLUSION

We affirm the superior court's grant of summary judgment, imposition of CR 11 sanctions, and award of attorney fees to the City. We also award attorney fees to the City on appeal subject to limitations.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

BJORGEN, C.J.

We concur:

WORSWICK, J.

JOHANSON, J.