[Nos. 22933-1-II; 23086-1-II.   Division Two.   June 18, 1999.]

STELLA SALES, INC., ET AL., *Respondents*, v. DEMAY C. JOHNSON, *Appellant.*

CHRISTOPHER J. JOHNSON, ET AL., *Appellants*, v. STELLA SALES, INC., ET AL., *Respondents.*

12

*Michael T. Schein,* for appellants.

*Stephen Michael Hansen* of *Lowenberg, Lopez & Hansen,* for respondents.

BRIDGEWATER, C.J. — In consolidated appeals Christopher J. Johnson and Constance J. O'Neill (Johnson and O'Neill) appeal posttrial orders finding them in contempt, substituting them as defendants in an action for specific performance, and denying a motion to disqualify the judge; and in another action they appeal orders vacating an order of default and quashing a writ of restitution in their unlawful detainer action against Stella Sales, Inc. We vacate the judgment in the action for specific performance and remand, but affirm the orders finding them in contempt, vacating the order of default, and quashing the writ of restitution.

Both appeals concern certain commercial property in Tacoma (the property) that DeMay Johnson leased to Stella Sales. Johnson and O'Neill are DeMay Johnson's son and daughter. In early 1994, Stella Sales sued DeMay Johnson for specific performance of an option contract to purchase the property and recorded a notice of lis pendens to provide record notice that ownership of the property was disputed. The superior court granted summary judgment to Stella Sales and DeMay Johnson appealed. Pending the appeal, in March 1995, the superior court enjoined DeMay Johnson "and/or anyone acting in concert with her or on her behalf" from pursuing an unlawful detainer action regarding the property. In March 1997, the Court of Appeals reversed the order granting summary judgment, holding that the authenticity of DeMay Johnson's signature on an addendum to the option contract presented a material question of fact.[1]

On remand, the suit for specific performance proceeded to a bench trial on October 30, 1997. DeMay Johnson appeared initially at trial, but due to her advanced age, her counsel requested that DeMay's son and daughter be allowed to remain in her stead at counsel table and assist with the trial. To support this request for assistance, counsel stated on the record that Johnson and O'Neill were the real parties in interest in the litigation, because DeMay Johnson had distributed the property to them as part of her estate. Indeed, a week before trial commenced, DeMay Johnson had transferred the property to Johnson and O'Neill by quitclaim deed. However, no one brought the quitclaim deed to Stella Sales' or the court's attention. Johnson and O'Neill were present throughout the trial while DeMay appeared for only a few hours.

At the conclusion of trial on November 6, 1997, with Johnson and O'Neill present, the court ruled in favor of Stella Sales ordering enforcement of the purchase contract, and the court requested that counsel submit agreed find-

---

[1]*Stella Sales Inc. v. DeMay C. Johnson*, 85 Wn. App. 1021 (1997) (unpublished opinion).

ings of fact and conclusions of law. On December 17, 1997, DeMay Johnson died of cardiac arrest. Counsel for Stella Sales sent proposed findings and conclusions to counsel for DeMay on December 19 and eventually, receiving no response, noted a hearing for presentment.

Less than one month later, Johnson and O'Neill served Stella Sales with a three-day notice to pay rent or to vacate. Stella Sales responded by moving (under the cause number and caption of the Stella Sales/DeMay Johnson litigation) for a contempt finding, CR 11 sanctions, attorney fees, and other relief. Johnson filed DeMay's death certificate and indicated that he was the personal representative of the deceased. A few days later, Johnson and O'Neill, representing themselves pro se,[2] filed and served the unlawful detainer complaint requesting possession of the property and back rent in excess of $100,000.

On January 29, 1998, with the hearing on the contempt motion scheduled for the next day, O'Neill filed a motion of prejudice against the judge under RCW 4.12.040 and .050, and Johnson and O'Neill filed a memorandum in opposition to Stella Sales' motion for contempt. On the same day, Stella Sales moved the court under CR 25(c) for an order substituting Johnson and O'Neill as defendants.

Johnson and O'Neill appeared at the show cause hearing on January 30 and challenged the court's jurisdiction over them, arguing that they were not parties to the Stella Sales/DeMay Johnson litigation and the court had no authority to find them in contempt. The trial court found Johnson and O'Neill to be in contempt for violating the injunction order of March 31, 1995, and the court's oral ruling of November 6, 1997. The trial court further ordered that Johnson and O'Neill purge themselves of contempt by dismissing the unlawful detainer action with prejudice.

Rather than purge the contempt finding by dismissing the unlawful detainer action, Johnson and O'Neill continued to prosecute the claim. Stella Sales appeared before the

[2]Johnson and O'Neill continued to represent themselves pro se in the lower court.

commissioner on February 4 for the unlawful detainer hearing but Johnson and O'Neill had already obtained an order of default and an order for a writ of restitution. Upon hearing Stella Sales' presentation of the recent history of the litigation, the commissioner vacated the order of default. Similarly, a commissioner quashed the writ of restitution upon learning that the order of default had been vacated. Because Johnson and O'Neill failed to dismiss the unlawful detainer action, Stella Sales filed another motion for contempt, sanctions, and attorney fees.

On February 6, 1998, the trial court granted the motion to substitute Johnson and O'Neill as defendants in the Stella Sales/DeMay Johnson litigation, and the court entered findings of fact and conclusions of law and a judgment that were consistent with the court's posttrial oral ruling. The record on appeal does not contain an affidavit of service indicating that that Johnson and O'Neill were personally served with the motion to substitute them as parties. Nor does the record contain a declaration indicating that Johnson and O'Neill were given notice of the presentment hearing.

The judgment listed Johnson and O'Neill as the judgment debtors, because the court had ruled that Stella Sales was entitled to recoup rents paid after the company exercised its option to purchase. The court also entered an order on February 6 shortening time to hear the contempt motion on February 13. Johnson and O'Neill were not present at the February 6 hearing, and when they failed to appear at the February 13 show cause hearing despite being served with the order to show cause, the court issued a bench warrant. In April 1998, a commissioner of this court stayed the contempt order pending appeal.

## I. SPECIFIC PERFORMANCE PROCEEDINGS
### A. Substitution of Parties and Notice of Judgment

Johnson and O'Neill assign error to the substitution order and the entry of the findings, conclusions, and judg-

ment. They advance two main arguments: (1) the trial court erred by substituting them as parties after the trial concluded; and (2) they were never properly served with the substitution motion nor did they receive copies of the proposed findings of fact, conclusions of law, or judgment. Stella Sales counters that Johnson and O'Neill would have been bound by a judgment against DeMay Johnson as a result of the lis pendens, so any error is harmless.

■■ When a party dies after commencement of suit, CR 25(a) governs the substitution of the "successors or representatives" of the deceased party.[3] When a party transfers its interest in the litigation pendente lite, CR 25(c) governs the substitution of parties.[4] Under the unusual facts of this case, Stella Sales could have moved for substitution of either Johnson and O'Neill under CR 25(c) or Johnson under CR 25(a).

Johnson and O'Neill claim it was error for Stella Sales and the court not to substitute them as parties at the beginning of the trial. But substitution under subsection (c) is not required, and an action may be continued "by or against the original party." CR 25(c). Any party may make the motion to substitute. 7C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1958 (2d ed. 1986). "Whether or not the transferee is made a party, it will be bound by an adverse judgment for its rights are no better

---

[3]CR 25(a)(1) provides:

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by the successors or representatives of the deceased party or by any party and, together with the notice of hearing, shall be served on the parties as provided by rule 5 for service of notices, and upon persons not parties in the manner provided by statute or by rule for the service of a summons. If substitution is not made within the time authorized by law, the action may be dismissed as to the deceased party.

[4]CR 25(c) provides:

In case of any transfer of interest, the action may be continued by or against the original party unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in section (a) of this rule.

than those of its transferor's." *Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 79 Wn. App. 221, 227, 901 P.2d 1060 (1995), *aff'd*, 130 Wn.2d 862, 929 P.2d 379 (1996). Because the transfer of property in this case occurred pendente lite and not prior to commencement of suit, CR 25(c) applies rather than CR 17 and CR 19. *See* 6 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE, § 25.30[2] (Daniel R. Coquillette et al. eds., 3d ed. 1999). Posttrial and even postjudgment substitutions, though infrequent, are contemplated by CR 25. *See Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 21-28 (7th Cir. 1977) (postjudgment contempt finding and substitution order justified in patent infringement case).

Therefore, Stella Sales had the option either to continue the trial against the original party or move the court to substitute Johnson and O'Neill as defendants. Similarly, Johnson and O'Neill or DeMay could have moved the court for substitution under CR 25(c) if Johnson and O'Neill genuinely sought an opportunity to defend the action. The Stella Sales/DeMay Johnson trial conclusively adjudicated Johnson and O'Neill's interest in the property. A posttrial substitution would not alter or affect this fact.

■ But when DeMay Johnson died, Stella Sales lost the option (under CR 25(c)) of continuing the litigation against her. When a party to a lawsuit dies, the cause of action survives, but the action must be continued by or against the deceased party's representatives or successors in interest. RCW 4.20.050; *Barker v. Mora*, 52 Wn. App. 825, 827-31, 764 P.2d 1014 (1988) (holding that one-year time limitation for substitution in RCW 4.20.050 is superseded by CR 25(a)). The attorney for the deceased party may no longer represent her interests. *See, e.g., Bingham v. Zolt*, 683 F. Supp. 965, 976 (S.D.N.Y.1988) (death of client terminates the attorney-client relationship, and attorney may not act further unless authorized to do so by deceased client's representative).

Therefore, after DeMay Johnson died, Stella Sales could no longer simply proceed against her. Even though the trial

in the matter had concluded, judgment had not been entered, and Stella Sales had to present proposed findings of fact, conclusions of law and judgment.[5] To proceed, Stella Sales had to substitute either Johnson (as the representative of DeMay Johnson's estate pursuant to CR 25(a)) or Johnson and O'Neill (as transferees of the property pursuant to CR 25(c)).

■ CR 25(a) and (c) require that a motion to substitute be served on nonparties in a manner "provided by statute or by rule for the service of a summons," i.e., pursuant to CR 4. In this case, Stella Sales had to personally serve the party or parties to be substituted with the motion to substitute and a notice of hearing. *See* CR 25(a), (c); *Anderson & Middleton Lumber*, 79 Wn. App. at 227. In addition, CR 52(c) and CR 54(f)(2) require that parties receive both notice of the presentation of proposed findings of fact, conclusions of law, judgment, and copies of the proposed orders.

There is no proof of service of either the motion to substitute or the notice of presentation of proposed findings of fact, conclusions of law, and judgment. Because there is no record of proof of service and compliance with CR 25, we find the substitution to be ineffective; thus, we must vacate the findings, conclusions, and judgment. Although we remand for a substitution under CR 25(a) or (c),

---

[5]Washington courts have recognized a common law rule empowering the trial court to enter judgment nunc pro tunc when a party dies prior to entry of the final decree. *Pratt v. Pratt*, 99 Wn.2d 905, 909, 665 P.2d 400 (1983); *Garrett v. Byerly*, 155 Wash. 351, 354-59, 284 P. 343, 68 A.L.R. 254 (1930). The rule may be invoked in limited circumstances:

First, the cause at the time of death must be ripe for judgment. Second, the delay in entering judgment must not have been caused by the party seeking the decree nunc pro tunc. Finally, the judgment must not injuriously affect subsequently acquired rights of innocent third parties. *Garrett*, [155 Wash.] at 357.

*Pratt*, 99 Wn.2d at 909. Here, the first and third parts of the test are satisfied. But it appears that Stella Sales, alone, is responsible for the delay in entering the judgment. Stella Sales did not send proposed orders to DeMay's attorney until some forty days after the court announced its decision. In the interim, DeMay died. DeMay did not file a motion during the interim period.

no new trial is necessary for the entry of the findings, conclusions, and judgment.

## B. Affidavit of Prejudice

We affirm the holding of the superior court denying O'Neill's affidavit of prejudice against the trial judge. DeMay transferred the property to Johnson and O'Neill pending the litigation. As such, they took the property subject to the lawsuit in progress. At the time the affidavit was filed, the trial court had presided over the trial of the matter and had already made numerous discretionary rulings. DeMay could not have filed an affidavit of prejudice (had she lived) and neither can her successors in interest. This case is, therefore, different from *Public Utility District No. 1 v. Walbrook Insurance Co.*, 115 Wn.2d 339, 797 P.2d 504 (1990), which did not involve a transfer of disputed property during litigation.

## C. Contempt

An appellate court will uphold a trial court's contempt finding "as long as a proper basis can be found." *State v. Boatman*, 104 Wn.2d 44, 46, 700 P.2d 1152 (1985) (citing *State v. Heiner*, 29 Wn. App. 193, 627 P.2d 983 (1981)). If the finding is based upon the violation of an order, the order must be strictly construed in favor of the contemnor. *In re Marriage of Humphreys*, 79 Wn. App. 596, 903 P.2d 1012 (1995). Violation of an oral order may serve as a proper basis for a contempt finding. *State ex rel. Curtiss v. Erickson*, 66 Wash. 639, 641, 120 P. 104 (1912); *see also Griffin v. Draper*, 32 Wn. App. 611, 614-15, 649 P.2d 123 (1982). In addition, persons in privity of estate or contract may be subject to the order or decree. *State ex rel. Olding v. Stampfly*, 69 Wash. 368, 125 P. 148 (1912) (subsequent grantee held in contempt for violating decree fixing water rights). A nonparty may be held in contempt for violating a court order, if the court finds that the person had actual knowledge of the order. *State v. Mecca Twin Theater & Film Exch., Inc.*, 82 Wn.2d 87, 93, 507 P.2d 1165

(1973); *In re Koome,* 82 Wn.2d 816, 821, 514 P.2d 520 (1973).

The trial court initially held Johnson and O'Neill in contempt on January 30, 1998, for violating both the March 31, 1995 injunction and the court's November 6, 1997 oral order of specific performance. When Johnson and O'Neill failed to purge themselves of contempt by dismissing the unlawful detainer action, the trial court again found them in contempt on February 13, 1998. Johnson and O'Neill attack these contempt findings on three grounds: (1) as nonparties, they assert that the court did not have jurisdiction over them; (2) the 1995 injunction expired by its own terms upon resolution of the first appeal; and (3) the November 6, 1997 order was merely an oral order and therefore nonbinding.

Of these three arguments, only the second has merit. The March 31, 1995 injunction, by its own terms, existed only "pending determination of the defendant's appeals." The appeal terminated when this court issued its mandate in early 1997, remanding the matter for trial. Accordingly, the trial court erred in finding that Johnson and O'Neill violated the 1995 injunction.

Even though the trial court so erred, we examine whether any other basis exists justifying the contempt finding. *Boatman,* 104 Wn.2d at 46. The trial court's secondary rationale for finding contempt was that Johnson and O'Neill violated the court's November 6, 1997 posttrial oral ruling.

In appropriate circumstances, a trial court may find a nonparty in contempt of court when the person has actual knowledge of the court order. *Mecca Twin Theater,* 82 Wn.2d at 93; *In re Koome,* 82 Wn.2d at 821. In addition, persons in privity of estate may be found in contempt for violating an order adjudicating rights to property. *Olding,* 69 Wash. at 373. Johnson and O'Neill do not contest that they were present at the November 6, 1997 hearing at the conclusion of trial when the court announced its decision ordering specific performance. Even though they were non-

parties on November 6, Johnson and O'Neill were the successors in interest to the property and were bound by the court's ruling adjudicating the substantive rights of the parties in the property.

Maintaining an unlawful detainer action against Stella Sales was completely inconsistent with the court's ruling that Stella Sales had lawfully exercised its option to purchase the property and that DeMay Johnson must sell the property to Stella Sales. When Johnson and O'Neill initiated the unlawful detainer action, they openly defied the court's order. The court's finding of contempt on January 30, 1998, was justified under these facts.

Raising the argument for the first time in their reply brief, Johnson and O'Neill suggest that the court's November 6, 1997 order, being only an oral order, was nonbinding and therefore unenforceable through contempt proceedings. Appellate courts do not normally address arguments first raised in reply briefs. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We examine this argument in any event and reject it. Oral orders may be enforced against those who have actual knowledge of the order. *See Griffin*, 32 Wn. App. at 614-15; *Curtiss*, 66 Wash. at 641. A litigant should not be allowed to gain advantage by defying an oral order before the court enters the written order.

We also hold that the February 13, 1998 finding of contempt was justified. The trial court allowed Johnson and O'Neill the opportunity to purge the initial contempt finding by dismissing the unlawful detainer action. Johnson and O'Neill adopted the position that the court did not have jurisdiction over them. Rather than dismiss the action, they took a default against Stella Sales in the unlawful detainer action, obtained a writ of restitution, and made preparations to evict Stella Sales from the property. Because the trial court had jurisdiction to issue the January 30, 1998 contempt order, Johnson and O'Neill were

bound by the order.[6] The trial court's subsequent contempt finding of February 13, 1998, was not erroneous nor was the warrant for arrest.

## II. UNLAWFUL DETAINER PROCEEDINGS

Johnson and O'Neill's pro se appeal in the unlawful detainer proceeding attacks the commissioners' orders vacating the order of default and quashing the writ of restitution. The crux of the entire appeal is that the trial court in the specific performance proceeding exceeded its authority by finding Johnson and O'Neill in contempt and, consequently, the contempt orders were void and should not have been considered by the commissioners. We reject this argument.

Johnson and O'Neill ironically complain that the appealed orders resulted from ex parte contact by Stella Sales. Yet Johnson and O'Neill evidently procured a default order by arriving in advance of the scheduled hearing and by producing an order while failing to disclose the full circumstances surrounding the specific performance trial, the contempt proceedings, and other material facts. When parties or their attorneys meet ex parte with a tribunal, they are under an extraordinary burden to disclose all material information, both for and against their position, to the tribunal. Counsel for Stella Sales addressed the commissioner on the record at a default hearing noted by Johnson and O'Neill. The commissioner vacated the order of default after hearing Stella Sales' presentation regarding the recent history of the litigation, including the contempt hearing before the court in the specific performance proceeding. Johnson and O'Neill's complaints about ex parte process are not well taken. We find no error in the commissioner's immediate vacation of the order of default upon hearing the full history of the litigation and the

---

[6]*See generally Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 280-84, 534 P.2d 561 (1975) (discussing cases where trial court's contempt finding is purged due to trial court's lack of jurisdiction).

complete lack of legal merit in Johnson and O'Neill's position. When the order of default was vacated, the writ of restitution necessarily failed. It was not error for the commissioner to quash the writ upon finding that the order of default had been vacated. The commissioner may now deal with the contempt upon remand.

Johnson and O'Neill assert that the trial court did not have jurisdiction over them to issue a contempt order. This argument fails because they had actual knowledge of the holding of the court and the court had specifically told them to dismiss their action. Finally Johnson and O'Neill unjustifiably claim that the trial court in the specific performance proceeding violated the Code of Judicial Conduct. The assertion is without basis.

### III. ATTORNEY FEES

We consider whether to impose attorney fees against Johnson and O'Neill. RAP 18.9(a) authorizes the appellate court to order sanctions against a party or an attorney who brings a frivolous appeal. "In determining whether an appeal is brought for delay under RAP 18.9(a), our primary inquiry is whether, when considering the record as a whole, 'it presents no debatable issues and is so devoid of merit there is no reasonable possibility of reversal.' " *Watson v. Maier*, 64 Wn. App. 889, 901, 827 P.2d 311 (quoting *Streater v. White*, 26 Wn. App. 430, 434, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980)), *review denied*, 120 Wn.2d 1015 (1992). Because we have found that the substitution was invalid, we do not award attorney fees against Johnson and O'Neill.

Affirmed in part, reversed in part, remanded.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 139 Wn.2d 1012 (1999).