
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | No. 36940-4-III |
| MADELINE M. THIEDE TRUST | ) | (consolidated with |
| | ) | No. 37322-3-III, |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | No. 37444-1-III) |
| | ) | |
| GERALD VERHAAG, a beneficiary of | ) | |
| Madeline M. Thiede Trust, | ) | |
| | ) | UNPUBLISHED OPINION |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GORDON FINCH, a beneficiary and | ) | |
| Trustee of Madeline M. Thiede Trust, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, A.C.J. — After Gordon Finch was replaced as trustee of a trust

created by his mother, he made several payments of trust funds to himself and his then-

attorney, Robert Kovacevich, based on advice received from Mr. Kovacevich. When the

payments were challenged as contempt of court in this TEDRA[1] action, Mr. Finch

retained new counsel and returned all the funds he had paid to himself. He later entered

into a TEDRA agreement with the other trust beneficiaries under which he assumed their

expenses and losses incurred in connection with the improper payments and took an

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[1] Trust and Estate Dispute Resolution Act, chapter 11.96A RCW.

assignment of their claims against Mr. Kovacevich. Based on the assignment, two judgments against Mr. Kovacevich were entered in favor of Mr. Finch.

In these consolidated appeals, Mr. Kovacevich challenges a number of orders and judgments entered by the trial court. Because many were not timely appealed and, where his appeals are timely, he demonstrates no error or abuse of discretion by the trial court, we affirm and award reasonable attorney fees to Mr. Finch.

## FACTS AND PROCEDURAL BACKGROUND

On the death of Madeline Thiede in April 2014, Gordon Finch, her son, became the trustee of the Madeline M. Thiede 2009 Revocable Trust (as amended and restated in 2013). The trust had four beneficiaries: Gordon; his brother, James Finch; Kenneth Verhaag; and Gerald Verhaag.[2] A major asset of the trust was a small shopping center located in Spokane Valley.

A disagreement arose over Gordon's management of the trust, and Gerald filed the TEDRA action below, seeking Gordon's removal as trustee; to replace him with James Spurgetis, a professional trustee; an accounting; remedies for any self-dealing; and other related relief. At a hearing on January 8, 2018, at which Gordon and his then-attorney, Robert Kovacevich, were present, the trial court orally granted the motion to remove Gordon as trustee and appoint Mr. Spurgetis to replace him. A written order

---

[2] Given surnames that are common to multiple players in the appeal, we hereafter refer to the beneficiaries by their first names. We intend no disrespect.

2

memorializing the ruling was entered on January 10, 2018, and was mailed to Mr.

Kovacevich. In communications between Gordon and Mr. Spurgetis or Mr. Spurgetis's

paralegal thereafter, Gordon was authorized to continue managing the shopping center

and to pay certain operating expenses until Mr. Spurgetis's office could "get[ ] up to

speed." Clerk's Papers (CP) at 973. Mr. Spurgetis assumed management responsibility

by approximately the end of March 2018.

*First contempt proceeding: receipt by Mr. Kovacevich of $11,211.80*[3]

In December 2018, Gerald brought a motion for an order holding Gordon and Mr.

Kovacevich in contempt after learning that Gordon made unauthorized payments of trust

funds to himself and Mr. Kovacevich after the January 8, 2018 hearing at which he was

removed as trustee. Kenneth was permitted to intervene in the TEDRA action and joined

in the motion. Since Gordon claimed to have relied on advice from Mr. Kovacevich in

making the payments, a conflict of interest existed, so Gordon engaged new counsel to

represent him in the proceedings below.

---

[3] In proceedings below, the first contempt proceeding initiated by beneficiaries addressed the failure of Gordon to timely deliver trust records and assets to Mr. Spurgetis. As a result, this challenge to Mr. Kovacevich's receipt of $11,211.80 in trust funds in March 2018 is referred to in proceedings below as the second contempt proceeding.

The failure to timely deliver trust records and assets is not at issue on appeal, so we begin our numbering of the contempt proceedings with the December 2018 contempt motion.

The motion was argued to the court on March 1, 2019, and was taken under advisement. In a letter ruling sent to the parties on March 27, 2019, the trial court found that four payments made by Gordon with trust funds between January 8 and March 12, 2018, were in willful violation of a clear and unambiguous order. It reasoned that Gordon's reliance on advice of counsel did not absolve him, and found both Gordon and Mr. Kovacevich in civil contempt.

Gordon had returned the trust monies in his possession on December 21, 2018, within days after he retained new counsel. The trial court found that he had thereby purged his contempt. It imposed a sanction on Gordon in the form of liability for the attorney fees incurred by the Verhaags in bringing the motion.

Since Mr. Kovacevich had not returned $11,211.80 in trust funds improperly paid to him, the trial court ordered him to return the sum to Mr. Spurgetis by the close of business on April 5, 2019, failing which he would be subject to a civil penalty of $250.00 per day until paid. It imposed a sanction of the Verhaags' attorney fees on Mr. Kovacevich as well, stating that Mr. Kovacevich would be solely responsible for the Verhaags' fees incurred after December 21.

Reading the trial court's March 27, 2019 letter ruling triggered Gordon's memory that he had made a $17,919.38 payment of trust funds to Mr. Kovacevich on January 9, 2018, (again relying on Mr. Kovacevich's advice), that had not been addressed by the

4

Verhaags' motion or the court's order. He disclosed the fact of that payment to his attorney, who informed attorneys for the other beneficiaries on April 9, 2019.

Findings, conclusions and an order in the first contempt proceeding were entered on May 3, 2019.[4] The order directed the Verhaags to present evidence of their fees and costs within 10 days.

Mr. Kovacevich filed a timely motion for reconsideration. An order denying the motion for reconsideration was entered on June 13, 2019. At some point, Mr. Kovacevich returned the $11,211.80 as required by the contempt order.

On September 11, 2019, the trial court entered an order fixing the amount of the attorney fees and costs it had previously ordered were recoverable by the Verhaags. For this first contempt proceeding, the reasonable amounts it found them to have necessarily incurred after December 21, 2018, recoverable solely from Mr. Kovacevich, were $19,727.79 for Gerald and $5,645.00 for Kenneth.

Mr. Kovacevich filed motions for reconsideration and to vacate the attorney fee award. The motions are not included in the record on appeal or in any briefing. An order denying the motion for reconsideration that was filed on November 8, 2019, indicates the motion was filed on September 20, 2019. An order fixing a November 15, 2019 date for

---

[4] Several of the orders at issue or mentioned on appeal were signed on one day and filed with the clerk of court a day (or more) later. In such cases, the parties and the court have referred inconsistently to when they were "entered." Since the trial judge did not note on any of the orders that it had permitted filing with him, we refer to the orders as being entered on the day they were filed with the clerk of court. *See* CR 5(e), 58(b).

5

hearing the motion to vacate identifies the motion as a "CR 60(b)(1)(6)(11) motion . . . dated September 20, 2019." CP at 1068. The trial court orally denied the motion to vacate at the conclusion of the November 15 hearing and entered a written order denying the motion on December 19, 2019.

*Second contempt proceeding: receipt by Mr. Kovacevich of $17,919.38*[5]

On May 3, 2019, the Verhaags—acting on Gordon's disclosure of the $17,919.38 payment of trust funds to Mr. Kovacevich on January 9, 2018—obtained an order to show cause directed to Gordon and Mr. Kovacevich. The order directed them to appear and show cause on May 31, 2019, why they should not be held in contempt for violating the trial court's January 8, 2018 ruling by making (in Gordon's case) and accepting (in Mr. Kovacevich's case) the $17,919.38 payment. The order was served on Mr. Kovacevich's counsel, but Mr. Kovacevich filed no response and neither he nor his attorney appeared on the return date. In an order entered on June 14, 2019, the trial court again found that both Gordon and Mr. Kovacevich violated its January 8, 2018 oral ruling. The trial court found that Gordon purged the contempt by voluntarily disclosing the $17,919.38 payment and demanding that Mr. Kovacevich return the money to the trust.

---

[5] This was referred to in proceedings below as the third contempt proceeding. *See* n.3, *supra*.

The trial court ordered Mr. Kovacevich to return the $17,919.38 to Mr. Spurgetis within 10 days of its order, failing which he would be subject to a civil penalty of $250.00 per day until the amount was returned. The trial court also ordered Mr. Kovacevich to pay the Verhaags' attorney fees and costs incurred in bringing this second contempt motion. Mr. Kovacevich failed to return the $17,919.38.

The trial court's September 11, 2019 order fixing the attorney fee and cost awards for the first contempt proceeding also fixed Gerald and Kenneth's recoverable fees and costs for the second contempt proceeding. It found that the reasonable amounts necessarily incurred, all of which were recoverable solely from Mr. Kovacevich, were $8,416 for Gerald and $3,135 for Kenneth.

As previously recounted, Mr. Kovacevich filed motions for reconsideration and to vacate the attorney fee award, both of which were denied.

*TEDRA agreement, Mr. Kovacevich's unsuccessful challenges to the agreement, and Gordon's action on his assignment*

Meanwhile, on June 11, 2019, the beneficiaries of the trust entered into a nonjudicial binding agreement in which they settled disputes among themselves, obviating any need for trial (hereafter "the agreement" or "the TEDRA agreement"). The agreement provides that it "shall settle all claims pending in this instant proceeding between and among Gerald, Kenneth, James, and Gordon." CP at 238. The agreement was approved by the court by an order entered on June 13, 2019.

7

The agreement recounts Mr. Kovacevich's outstanding liability to the trust, including attorney fees and costs in amounts to be determined; actions that Gordon took on the advice of Mr. Kovacevich; and the extent to which those actions had exposed Gordon to findings of contempt and financial liability.

Sections IV.F through IV.G of the agreement address how the parties proposed to address their legal claims against Mr. Kovacevich, including the Verhaags' then-pending right to recover attorney fees and costs in an amount to be determined. Briefly stated, they provide that in distributing the assets of the trust, Gordon's share would be reduced by all attorney fees in the superior and appellate court that the Verhaags had been awarded or would be awarded against Mr. Kovacevich. They provide that the Verhaags would assign their right to recover the fees from Mr. Kovacevich to Gordon, so that he could enforce orders of the court and pursue recovery from Mr. Kovacevich. They provide that Gerald, Kenneth, James, and the trust would assign to Gordon any and all claims they may have against Mr. Kovacevich.

In a "Release" provision of the agreement, Gerald, Kenneth, James and Gordon released

> each other, their successors, estates, legal representatives, agents, assigns and all persons or entities acting for, by or through any of them from any and all claims, losses, actions, causes of action, judgments, damages, liabilities and demands of every kind, name or nature, known or unknown, in any way having to with the Madeline M. Thiede Trust and the litigation pending under Spokane County, Washington cause number 16-4-01301-7 in accordance with the terms of this Agreement.

8

CP at 243.

Applying the TEDRA agreement, Gordon's share of the trust assets, which would have been $289,470.79, was reduced by $17,919.38 for the check paid to Mr. Kovacevich on January 9, 2018, by Gerald's attorney fees of $150,714.94, and by Kenneth's attorney fees of $54,417.50.

Mr. Kovacevich became aware of the TEDRA agreement sometime in June 2019. The record on appeal, although very incomplete on this score, reveals several unsuccessful efforts on Mr. Kovacevich's part to challenge the validity of the TEDRA agreement while at the same time arguing that it released him and required the TEDRA action to be dismissed. On June 28, 2019, he filed a 29-page motion attacking the TEDRA agreement on multiple grounds. On July 22, 2019, he filed a motion for dismissal of the June 13, 2019 order holding him in contempt. Among other arguments, Mr. Kovacevich contended the TEDRA agreement was not valid because he had not received notice of it and an opportunity to be heard; at the same time he argued that the Verhaags could not assign their claims against him because, by the terms of the TEDRA agreement, they had released them.

On July 2, 2019, Gordon filed a declaration attesting to the assignment to him of the beneficiaries' claims against Mr. Kovacevich. He attached a copy of a fully-executed assignment agreement. Since Mr. Kovacevich had failed to pay the $17,919.38 that he had been ordered to pay within 10 days of the June 13, 2019 order on the second

9

contempt, Gordon filed a motion for entry of findings, conclusions and a judgment, noting it for hearing on July 18, 2019.

At the July 18 hearing, Mr. Kovacevich's attorney objected on grounds that he had not been served with the order to show cause why Mr. Kovacevich should not be held in contempt a second time, which is why neither he nor Mr. Kovacevich were present on the return date. His second argument was that "this case is over, so I don't think the Court has jurisdiction." Report of Proceedings (RP)[6] at 70. He also argued that "Mr. Kovacevich was never a party in this action." *Id.* at 71.

Answering Mr. Kovacevich's claim that he was never served, Gordon's attorney expressed his understanding that the Verhaags did serve Mr. Kovacevich's attorney. His response to the challenge to jurisdiction was that "[t]he Court in its contempt order found it has jurisdiction. I don't know that we need to keep repeating that." *Id.* at 77.

The trial court orally ruled that it had both subject matter and personal jurisdiction. It rejected all of Mr. Kovacevich's challenges except his claim that he had not been served with notice of the show cause hearing, which the court had not realized was an issue. The court stated it would accept the findings, conclusions and judgment proposed by Gordon but would give the parties a short period of time to submit evidence on the issue of whether Mr. Kovacevich's attorney was served with the order to show cause.

---

[6] Two nonconsecutively paginated verbatim reports of proceedings have been filed with this court. The only one cited in this opinion is the volume reporting four hearings taking place in 2019.

On August 19, 2019, having received proof that Mr. Kovacevich's attorney was served with the order to show cause, the trial court entered the findings, conclusions, judgment summary and judgment in Gordon's favor for the $17,919.38 that Mr. Kovacevich had been ordered to repay together with the civil penalty, calculated through July 18, 2019 to be $5,750.00.

As of January 2020, Mr. Kovacevich had failed to pay the Verhaags the attorney fees and costs he had been ordered to pay in September for which he alone was liable: $19,727.79, $5,645.00, $8,416.00, and $3,135.00, for a total of $36,923.79. Gordon, relying on his assignment, moved for entry of a second judgment against Mr. Kovacevich. A judgment in the amount of $36,923.79, together with findings and conclusions, was entered on February 5, 2019.

*Notices of appeal and appealability*

Mr. Kovacevich filed three notices of appeal that are before us in this consolidated matter. They were filed on July 9, 2019, January 13, 2020, and February 27, 2020. The notice of appeal filed on January 13, 2020, attached and purported to appeal eight orders, some dating as far back as June 2019. It was placed on our commissioner's calendar for a determination of appealability.

On March 17, 2020, our commissioner ruled that Mr. Kovacevich's January 13, 2020 order timely appealed only two orders entered on December 19, 2019: the order denying motion to vacate and the order re: order denying motion to vacate. Our

11

commissioner observed that a third order identified—the trial court's June 13, 2019 denial of Mr. Kovacevich's motion for reconsideration of the contempt order—was timely appealed in one of the other consolidated matters.

Our commissioner ruled that the following five orders were not timely appealed:

- June 13, 2019 order approving TEDRA,
- June 14, 2019 order on petitioner Gerald Verhaag's and intervenor Kenneth Verhaag's joint motion for contempt,
- August 19, 2019 judgment, judgment summary and findings of fact, conclusions of law – Robert Kovacevich,
- September 11, 2019 order re: attorney fees, and
- November 8, 2019 order on motion for reconsideration.

Mr. Kovacevich's motion to modify the commissioner's ruling was denied, as was his petition to the Washington Supreme Court for discretionary review.

ANALYSIS

Mr. Kovacevich's opening brief makes 13 assignments of error, many related only to final orders that were not timely appealed. He fails to identify issues pertaining to the assignments of error. He includes a very short statement of the case and then embarks on argument that is untethered to specific notices of appeal, let alone specific assignments of error. It is impossible to address his opening brief as we ordinarily would, by tracking his assignments of error or the organization of his argument. We would have to figure out on our own if, when, and how the claimed errors were timely appealed.

12

Instead, we organize our analysis by separately addressing the three notices of appeal and relying on our commissioner's ruling on appealability for which trial court decisions were timely appealed by the January 13, 2020 notice of appeal.[7]

We begin by identifying in the table below the orders of the trial court that were final orders as to which Mr. Kovacevich was an aggrieved party and our commissioner's earlier, affirmed, ruling on whether they were timely appealed.

|  | First contempt proceeding | Second contempt proceeding |
|---|---|---|
| Order finding Mr. Kovacevich in contempt, ordering return of trust funds, setting the civil penalty to be imposed in the event of noncompliance, and awarding attorney fees and costs in an amount to be identified | The order was entered on May 3, 2019, followed by a timely motion for reconsideration, which was denied on June 13, 2019. **The reconsideration order was timely appealed on July 9, 2019.** | The order was entered on June 13, 2019. **This order was not timely appealed.** |
| Findings, conclusions, judgment and judgment summary in favor of Gordon, for failure to disgorge the $17,919.38 improperly paid and reflecting the civil penalty daily civil penalty | N/A | The findings, conclusions and judgment were entered on August 19, 2019. **This order was not timely appealed.** |

---

[7] Should Mr. Kovacevich petition for review, we point out to the Supreme Court that the appealability issues are not addressed in the parties' RAP Title 10 briefs. Instead, they were extensively briefed in correspondence addressed to our commissioner in February and March 2020, in connection with her review of appealability, and in briefs filed in April and May 2020, in support of and opposition to Mr. Kovacevich's motion to modify the commissioner's ruling.

| Order fixing the amount of reasonable attorney fees and costs to be awarded | The order was entered on September 11, 2019.<br><br>**This order was not timely appealed.** | The order was entered on September 11, 2019.<br><br>**This order was not timely appealed.** |
|---|---|---|
| Order denying motion to vacate the fee and cost-fixing order issued on September 11, 2019 (and related order explaining the order denying motion to vacate) | These orders were entered on December 19, 2019.<br><br>**The orders were timely appealed on January 13, 2020.** | These orders were entered on December 19, 2019.<br><br>**The orders were timely appealed on January 13, 2020.** |
| Judgment for attorney fees and costs in favor of Gordon | The judgment was entered on February 5, 2020.<br><br>**The order was timely appealed on February 27, 2020.** | The judgment was entered on February 5, 2020.<br><br>**The order was timely appealed on February 27, 2020.** |

Since the June 13, 2019 order finding civil contempt for what we term the second contempt was not timely appealed, we will not entertain assignments of error that relate to the finding of contempt for Mr. Kovacevich's receipt of the unauthorized payment of $17,919.38 in trust funds and the remedies imposed (an order to return the funds, per diem penalty for noncompliance, and an award to the Verhaags of reasonable attorney fees and costs in an amount to be determined).

Similarly, since the August 19, 2019 entry of findings, conclusions, and a judgment and judgment summary in favor of Gordon against Mr. Kovacevich was not timely appealed, we will not entertain assignments of error to the findings, conclusions, or judgment.

We turn in chronological order to the orders that were timely appealed and address the assignments of error that relate to them.

I.      THE JULY 9, 2019 APPEAL OF THE MAY 3, 2019 ORDER

Mr. Kovacevich's July 9, 2019 appeal of the trial court's May 3, 2019 contempt order was timely by virtue of his timely motion for reconsideration, which was denied by the trial court on June 13, 2019. *See* RAP 2.4(c)(3) (appellate court will review a final judgment not designated in the notice if the notice designates a timely motion based on CR 59).[8]

Mr. Kovacevich was aggrieved by the May 3 order in the following ways: the order found him in contempt for accepting Gordon's unauthorized payment of $11,211.80 in trust funds; it ordered him to return that amount to Mr. Spurgetis; it announced the civil penalty that would be assessed if he failed to comply; and it awarded the Verhaags their reasonable attorney fees and costs in an amount to be determined. Mr. Kovacevich chose to return the $11,211.80 paid to him and is no longer aggrieved by the order to return that amount or by the civil penalty. Any issues presented by those aspects

---

[8] Mr. Kovacevich's opening brief contends that his July 9, 2019 notice of appeal also appealed the TEDRA agreement. It did not; it plainly appealed only "the contempt part of the court judgment dated May 2, 2019." CP at 257. It "notified" this court "[p]ursuant to RAP 7.2(e)" that actions to change or modify a decision were "pending . . . in the trial court," CP at 258, reflecting an apparent misunderstanding of RAP 7.2(e). After an appeal has been filed, that rule provides a means for pursuing further decisions *in the trial court* that this court may or may not give the trial court permission to enter. It does not enlarge the scope of an appeal.

15

of the order are moot. An appeal is moot if it presents "purely academic issues" and it is "not possible for the court to provide effective relief." *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993).

Mr. Kovacevich's motion for reconsideration of the May 3 order raised two issues, both of which challenged the finding of contempt. His principal argument was that an attorney cannot be jointly liable with his client for contempt, on the basis of "advice honestly given," relying on *State ex rel. Nicomen Boom Co. v. N. Shore Boom & Driving Co.*, 55 Wash. 1, 14, 103 P. 426 (1909). A second argument was that the motion for contempt "should have been commenced by James Spurgetis," not trust beneficiaries.[9] CP at 213. His motion for reconsideration raised no challenge to the award of attorney fees to the Verhaags apart from challenging the underlying finding of contempt.

Mr. Kovacevich has designated and arranged for a record on review that we could find insufficient for us to review any assignment of error to the May 3 order. He did not even designate as a clerk's paper the response to his reconsideration motion.[10] Since the

---

[9] A third, passing, argument, was that "a court has no jurisdiction over the fee agreements between attorney and client." CP at 213. Mr. Kovacevich's briefing on appeal never speaks of this "fee agreement" issue; the only jurisdictional issues he attempts to raise on appeal depend on events taking place after the May 3 order.

[10] The trial court's decision denying the motion states that a response filed on May 28 was considered by the court.

16

motion for reconsideration was decided without oral argument, there is no way for this court to know what arguments were made in response to the motion for reconsideration.

Equally glaring is that of the 21 submissions the trial court identified in its May 3 order as having been considered by the court, Mr. Kovacevich failed to designate most as clerk's papers, and the majority of the missing submissions are the responses and replies of the Verhaags.[11] Also missing is Mr. Kovacevich's response to the Verhaags' contempt motion.

"The party presenting an issue for review has the burden of providing an adequate record to establish such error, and should seek to supplement the record when necessary." *State v. Sisouvanh*, 175 Wn.2d 607, 619, 290 P.3d 942 (2012) (citation omitted). The respondent has a right to supplement, but that is a right, not a duty to cure a deficient record designated by the appellant. This court "may seek to supplement the record on its own initiative when appropriate, [but] we may instead 'decline to address a claimed error when faced with a material omission in the record,' or we may simply affirm the challenged decision if the incomplete record before us is sufficient to support the decision, or at least fails to affirmatively establish an abuse of discretion." *Id.* (citations omitted) (quoting *State v. Wade*, 138 Wn.2d 460, 465, 979 P.2d 850 (1999)); *see also In re Det. of Halgren*, 156 Wn.2d 795, 804-05, 132 P.3d 714 (2006); *Easley v. Elmer*, 101

---

[11] Based on our review, Mr. Kovacevich failed to designate the documents identified by the court's order as (3), (4), (7), (8), (9), (10), (11), (14), (16), (17), (18), (19), and (20).

17

Wash. 408, 409, 172 P. 575 (1918); *Lau v. Nelson*, 92 Wn.2d 823, 829, 601 P.2d 527 (1979).

Under these circumstances, while we will review the two issues that Mr. Kovacevich raised in his motion for reconsideration, we will not address any other issues that he may believe were presented by the underlying May 3 order.

> A.       *Since Mr. Kovacevich took action disobedient to a lawful order of the trial court, he could be held jointly liable with Gordon for contempt*

Mr. Kovacevich assigns error to the trial court's alleged failure to follow the Washington Supreme Court's decision in *Nicomen Boom Co.*, which he characterizes as holding that an attorney who advises his client in good faith cannot be jointly liable for civil contempt with the client. Br. of Appellant at 32.

The decision states, "There is nothing in the [contempt] statute to indicate that it was intended to include one who in good faith advises the wrong." *Nicomen Boom Co.*, 55 Wash. at 13. As previously recognized by this court, the Supreme Court's reasoning that good faith legal advice cannot constitute contempt does not apply when the lawyer himself violates a court's order:

> [*Nicomen Boom Co.*] dealt with a lawyer, Mr. Abel, who did not himself violate the court's order as Mr. Gorman did here. [55 Wash.] at 14. Mr. Abel "advised the officers to do the things complained of," but "did not directly participate therein himself." *Id.* at 17 (Mount, J., dissenting). As observed by the majority opinion, "An offending attorney would be liable . . . for a willful disregard of the orders of the court, but it would require a forced construction of the statute to make him subject to civil liability

18

because of his advice honestly given." *Id.* at 14. . . . Mr. Gorman was not found in contempt for his advice, but for his actions.

*In re Structured Settlement Payment Rights of Rapid Settlements, Ltd.*, 189 Wn. App. 584, 603-04, 359 P.3d 823 (2015) (first alteration in original) (emphasis omitted).

In finding Mr. Kovacevich in contempt, the trial court, like this court in *Rapid Settlements*, found that Mr. Kovacevich himself violated the court's order:

> Kovacevich was present when the Court gave its January 8th ruling and was mailed a copy of the January 10th order. On January 18th, Mr. Kovacevich moved to extend the time set forth in the January 10th order and on January 19th he moved for reconsideration. Mr. Kovacevich prepared and submitted a billing after January 10th to the prior Trustee for services incurred after the 10th; he accepted payment for those services; and he declined to return the funds after being requested to do so by successor Trustee Spurgetis and by attorney Kyle Nolte.

CP at 269-70.

We agree with the trial court. Had Mr. Kovacevich merely advised Gordon to use trust funds to pay *others*, and were he able to demonstrate that he provided that advice in good faith, the reasoning of *Nicomen Boom Co.* would apply. Mr. Kovacevich did more. He accepted a substantial payment of trust funds in March 2018 from a client he knew had been removed as trustee two months earlier. His action is fairly characterized as contempt of a court order that he had heard announced in open court and seen in its written, entered form in January 2018. *See* RCW 7.21.010(1)(b) ("contempt of court" includes "[d]isobedience of any lawful . . . order, or process of the court").

19

Mr. Kovacevich argues that treating his acceptance of payment as contempt "would have . . . required [him] to refuse the payment of his earned legal fees." Br. of Appellant at 33. But if Mr. Kovacevich believed that services he performed were for the benefit of the trust and compensable with trust funds, he should have presented his bill for services to Mr. Spurgetis. The trial court did not err when it found him in contempt and jointly liable with Gordon.

B.      *The Verhaags had standing to move for a finding of contempt*

Mr. Spurgetis wrote to Mr. Kovacevich demanding he return the $11,211.80. Mr. Kovacevich briefly argued in moving for reconsideration of the May 3 order that for him to be found in contempt, Mr. Spurgetis should also have been the one to bring the contempt motion. He based his argument on common law distinctions between the authority of trustees and beneficiaries to take action on behalf of a trust.

We are dealing here with a TEDRA action, however, not common law. Whether the Verhaags had standing under TEDRA to seek an order of contempt against Mr. Kovacevich is a question of statutory interpretation. We review questions of statutory interpretation de novo. *In re Estate of Rathbone*, 190 Wn.2d 332, 338, 412 P.3d 1283 (2018).

Under TEDRA, "*any party* may have a judicial proceeding for the declaration of rights or legal relations with respect to *any matter* . . . ." RCW 11.96A.080(1) (emphasis added). "Matter" is broadly defined to include "[t]he determination of any question

20

arising in the administration of an estate . . . ."  RCW 11.96A.030(2)(c).  "Party" is

defined to include trust beneficiaries who "ha[ve] an interest in the subject of the

particular proceeding."  RCW 11.96A.030(5)(e).

Our Supreme Court held in *In re Estate of Becker*, 177 Wn.2d 242, 247, 298 P.3d

720 (2013), that in the context of a will contest, a party had a sufficient interest where she

"ha[d] a direct, immediate, and legally ascertained pecuniary interest in the devolution of

the testator's estate, such as would be impaired or defeated by the probate of the will or

benefited by the declaration that it is invalid."  In other words, while some actions on the

part of an estate may only be taken by the personal representative, beneficiaries have a

sufficient interest to participate in a TEDRA proceeding when it could affect their

pecuniary interest in the estate's devolution.

By the time Gerald's motion for contempt was heard, Kenneth had intervened in

support of the motion and the Verhaags collectively represented a 48 percent interest in

the trust.  The trust provided that on the death of Madeline Thiede, "the balance of trust

assets, both income and principal, shall be distributed" to the beneficiaries in accordance

with their interests.  CP at 1276.  Unauthorized payments to third parties of trust assets

would deplete assets available for distribution to the beneficiaries.  Under *Becker*, the

Verhaags had a sufficient interest in unauthorized payments to Mr. Kovacevich.

Mr. Kovacevich argues that the Verhaags lacked authority to move for a finding of

contempt under chapter 7.21 RCW because they were not "aggrieved" within the

21

meaning of RCW 7.21.030(1). He relies on *Freedom Foundation v. Bethel School District*, 14 Wn. App. 2d 75, 469 P.3d 364 (2020), but that case did not involve any issue of contempt, let alone address the meaning of "aggrieved" under RCW 7.21.030(1). It addressed whether a party was aggrieved under the unique three-part criteria required to have standing to appeal agency action under chapter 34.05 RCW. Clearly, that three-part test does not apply here.

Chapter 7.21 RCW does not have its own definition for "aggrieved," nor has any Washington decision announced a contempt-specific definition. The most logical basis for recognizing a party to a TEDRA action as "aggrieved" for purposes of making a contempt motion is whether the party was entitled to bring or participate in the TEDRA action. As explained above, the Verhaags had a sufficient interest under RCW 11.96A.030(5)(e). They therefore had standing to move for a finding of contempt.

II.    THE JANUARY 13, 2020 APPEAL OF THE DECEMBER 19, 2019 ORDERS

Mr. Kovacevich's next timely appeal was of the trial court's December 19, 2019 order denying his motion to vacate its September 11, 2019 order fixing the amount of attorney fees and costs awarded to the Verhaags. He also timely appealed a December 19, 2019 order that explained why the trial court was rejecting Mr. Kovacevich's objections to the form of its order denying the motion to vacate.[12]

---

[12] The trial court's order re: order denying motion to vacate on December 19, 2019, explained that its order denying motion to vacate was in a form presented by Gordon after the trial court orally denied the motion to vacate at the hearing on November 15, 2019. Mr. Kovacevich's attorney participated in that hearing

As previously noted, Mr. Kovacevich did not include his motion for a CR 60(b) order to show cause or any of the briefing on his motion to vacate in designating clerk's papers. According to the December 19, 2019 order denying motion to vacate, the briefing included a motion and declaration of Mr. Kovacevich, a response from Gordon, and a reply. Our only record is the order setting the hearing date, a transcript of the argument and oral decision taking place on November 15, 2019, and the final order.

CR 60(b) identifies limited grounds on which a party may obtain relief from a judgment or order. A motion to vacate cannot be used as a means to review and correct errors of law that are thought to have been committed in entering the order or judgment sought to be vacated. *State v. Keller*, 32 Wn. App. 135, 140, 647 P.2d 35 (1982) (citing *Hurley v. Wilson*, 129 Wash. 567, 568, 225 P. 441 (1924)). CR 60(b) does not authorize vacation of judgments except for reasons extraneous to the action of the court or for matters affecting the regularity of the proceedings. *Id.* (citing *Marie's Blue Cheese Dressing, Inc. v. Andre's Better Foods, Inc.*, 68 Wn.2d 756, 415 P.2d 501 (1966)). "'[I]rregularities justify vacation whereas errors of law do not. For the latter the only remedy is by appeal from the judgment.'" *Id.* (alteration in original) (quoting Philip A.

telephonically, wished to have an opportunity to review the order, and later objected to it. The order re: order denying motion to vacate explains that since Mr. Kovacevich's objections did not go to whether the order denying motion to vacate conformed to its oral ruling (the issue on presentment), it was entering the order in the form originally proposed on November 15.

Trautman, *Vacation & Correction of Judgments in Washington*, 35 WASH. L. REV. 505, 515 (1960)). "'An irregularity is deemed to be of such character as to justify the special remedies provided by vacation proceedings, whereas errors of law are deemed to be adequately protected against by the availability of the appellate process.'" *Id.* (quoting Trautman, *supra*).

Our record on appeal is wholly inadequate to review any error assigned to denial of the motion to vacate. It is impossible to determine whether Mr. Kovacevich's motion even raised an irregularity correctable by a motion to vacate. His opening brief on appeal strongly suggests he did not, since it makes no reference to "60(b)" and the word "irregularity" is never used. The transcript of the November 15 oral argument of the motion also suggests that no viable CR 60(b) motion was made, since Mr. Kovacevich presented only the same arguments of legal error he had been raising and the trial court had been rejecting for months.[13] In addition to being legal errors, the claimed errors took place at earlier hearings, not the September 11 hearing that Mr. Kovacevich was

---

[13] Mr. Kovacevich argued that (1) the TEDRA action was "over" when the beneficiaries entered into the TEDRA agreement in June, (2) approval of the TEDRA agreement under RCW 11.96A.240 was improper without notice to Mr. Kovacevich and a hearing in which he had the opportunity to participate, (3) the court made insufficient findings to support subject matter or personal jurisdiction, and (4) there should have been an evidentiary hearing on contribution. RP at 98-100.

challenging as irregular.[14]  It is impossible to identify and review assignments of error

associated with denial of the motion to vacate.

III.     FEBRUARY 27, 2020 APPEAL OF THE FEE JUDGMENT ENTERED ON
         FEBRUARY 5, 2020

The final matter that was timely appealed was the February 5, 2020 judgment

entered in Gordon's favor against Mr. Kovacevich for the aggregate in $36,923.79

attorney fees and costs that had been awarded to the Verhaags, which Mr. Kovacevich

timely appealed on February 27, 2020.

Mr. Kovacevich's assignments of error fail to heed this panel's denial of his

motion to modify our commissioner's ruling on appealability; he persists in raising

challenges to the underlying orders finding him in contempt and imposing sanctions.  We

will not consider them.

When Gordon relied on his assignment to recover a liability owed to the Verhaags,

Mr. Kovacevich did have a right to challenge whether the Verhaags could point to a

claim they had against him, because in any action on an assigned claim, the assignee

acquires a right against the obligor only to the extent that the obligor is under a duty to

the assignor.  "If the right of the assignor would be . . . unenforceable against [the

---

[14] If we were to find the September 11, 2019 order reviewable, it would be reviewable only as to the *amount* of fees, which is not challenged.  Where a trial court first determines a legal basis for awarding fees and only later determines their amount, an appeal challenging the legal basis for the award must be filed within 30 days of the former decision; an appeal of the latter decision comes too late.  *Bushong v. Wilsbach*, 151 Wn. App. 373, 377, 213 P.3d 42 (2009).

obligor] if no assignment had been made, the right of the assignee is also subject to that infirmity." 6 AM. JUR. 2D *Assignments* § 117 (2018) (citing RESTATEMENT (SECOND) OF CONTRACTS § 336(1) (AM. LAW INST. 1981)). In response to Gordon's motion for entry of a judgment, Mr. Kovacevich timely asserted the defense that the Verhaags had released their claims against Mr. Kovacevich in the TEDRA agreement. We address that challenge.

We also address Mr. Kovacevich's contention, raised in the trial court, that entry of the judgment violated RAP 7.2.

### A. *The Verhaags did not release their claims against Mr. Kovacevich*

Mr. Kovacevich defended against entry of Gordon's judgment on the basis that "the fees sought to be collected . . . were released by the Verhaags in the [TEDRA] Agreement, who waived all claims in the case against [Gordon's] attorney. The release includes Kovacevich, who was [Gordon's] attorney in the case." CP at 1113. He relies on section IV.K of the agreement, captioned, "Release," which states that "Gerald, Kenneth . . . individually, and their successors . . . do hereby fully release, acquit, and forever discharge each other, their successors, estates, *legal representatives* . . . from any and all claims, losses, actions, [etc]." CP at 243 (emphasis added) (boldface omitted).

Washington follows the objective manifestation theory of contracts, under which we declare the meaning of what is written. *Go2Net, Inc. v. C I Host, Inc.*, 115 Wn. App. 73, 85, 60 P.3d 1245 (2003). Our interpretation of a contract can be informed not only by

26

its language but also by its subject matter and objective, all the circumstances surrounding its making, and the reasonableness of the respective interpretations advocated by the parties. *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993). Our primary goal in interpreting a contract is to ascertain the parties' intent. *Paradise Orchards Gen. P'ship v. Fearing*, 122 Wn. App. 507, 516, 94 P.3d 372 (2004). Where, as here, the meaning of the contract was disputed on the basis of language, not extrinsic evidence, we determine the contract's meaning as a matter of law, and therefore de novo. *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 424 n.9, 191 P.3d 866 (2008).

Even the contract language on which Mr. Kovacevich relies does not support his position. Since the release provision does not release the releasing parties' "past and present" legal representatives, it is reasonably read to release only their present legal representatives, and Mr. Kovacevich was not a legal representative of Gordon's when the TEDRA agreement was signed. Elsewhere, the agreement expressly identifies Gordon's legal representative for purposes of the agreement: the introductory paragraph of the agreement identifies, for each beneficiary represented by counsel, the party's legal representative. It states, with respect to Gordon, that he "is represented by Scott R. Smith of Bohrnsen Stocker Smith Luciani Adamson PLLC." CP at 237.

Elsewhere, the agreement states, "[t]his Agreement does not resolve claims . . . that may exist against Gordon's *former* attorney, Robert Kovacevich," "Gordon will be

27

assigned these claims and resolve these matters directly with Mr. Kovacevich," "Gerald [and] Kenneth . . . shall assign any and all claims . . . they may have against Robert Kovacevich," "Gordon shall own any recovery against Mr. Kovacevich," "Gerald, Kenneth and their counsel shall execute such pleadings or documents as are necessary for Gordon to . . . pursue recovery from Mr. Kovacevich . . . for all sums that the Court has ordered or may order Mr. Kovacevich to pay," and "Gordon is paying attorney fees that the Court has/or will order Mr. Kovacevich to pay, and therefore, any recovery of attorney fees from Mr. Kovacevich shall belong to Gordon." CP at 238, 240-41 (emphasis added).

Manifestly, the TEDRA agreement did not release Gerald and Kenneth's claims against Mr. Kovacevich.

B.      *The trial court was authorized to reduce to judgment the attorney fees and costs previously awarded*

The Rules of Appellate Procedure make a distinction between finality on the merits and finality of costs. *Denney v. City of Richland*, 195 Wn.2d 649, 655, 462 P.3d 842 (2020). The fact that the merits have been resolved by a final judgment does not prevent the trial court from later determining an award of fees or costs. *See, e.g.*, RAP 2.2(a)(1) (allowing a party to appeal a final judgment "regardless of whether the judgment reserves for future determination an award of attorney fees or costs").

Contrary to Mr. Kovacevich's argument, entry of an order or judgment awarding attorney fees or costs does not require this court's authorization under RAP 7.2(e). After review is accepted by the appellate court, "[t]he trial court has authority to act on claims for attorney fees, costs and litigation expenses." RAP 7.2(i). Rather, as provided by that rule and by RAP 2.4(g), a timely appeal from the judgment on the merits will bring up for review an award of attorney fees by the trial court that is entered after the appellate court has accepted review. *Denney*, 195 Wn.2d at 655.

A party may transfer its interest in litigation pendent lite and the trial court may order substitution on the motion of any party. *Stella Sales, Inc. v. Johnson*, 97 Wn. App. 11, 17, 985 P.2d 391 (1999); CR 25(c). "Posttrial and even postjudgment substitutions, though infrequent, are contemplated by CR 25(c)." *Id.* at 18 (citing *Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 21-28 (7th Cir. 1977)).

The trial court was presented with the TEDRA agreement and a fully-executed assignment of rights that evidenced the Verhaags' transfer of their attorney fee and cost awards to Gordon. Mr. Kovacevich identifies no reason why the trial court lacked authority to enter a judgment for the attorney fee and cost award, substituting Gordon as the judgment creditor.

29

IV.     ATTORNEY FEES ON APPEAL

Gordon requests an award of reasonable attorney fees and costs on appeal, relying on RAP 18.1, RCW 7.21.030(3), and RCW 11.96A.150. Mr. Kovacevich opposes the request, arguing that because Gordon is an assignee he cannot be awarded attorney fees.

RAP 18.1(a) allows this court to award attorney fees and costs on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." RCW 7.21.030(3) allows the court to order a person found in contempt to pay a party for any losses suffered by a party as a result of the contempt, including reasonable attorney fees. RCW 11.96A.150 gives courts broad authorization to award attorney fees to "proceedings governed by [Title 11 RCW], including but not limited to proceedings involving trusts, decedent's estates and properties, and guardianship matters." RCW 11.96A.150(2).

In all three of Mr. Kovacevich's notices of appeal in this consolidated matter he named Gordon as the respondent. As a respondent (thereby a party), and having identified two legal bases for recovering reasonable attorney fees and costs, Gordon is entitled to our consideration of his request. We award Gordon his reasonable attorney fees and costs on appeal subject to his timely compliance with RAP 18.1(d).

30

Nos. 36940-4-III; 37322-3-III; 37444-1-III
*In re Madeline M. Thiede Trust*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Staab, J.